A01A0743. CALLAHAN v. THE STATE.
(550 SE2d 757)

MILLER, Judge.

A jury found Victor Eugene Callahan guilty of kidnapping, armed robbery, and hijacking a motor vehicle. Following the denial of his motion for new trial, Callahan filed this pro se appeal.[1] Callahan challenges the sufficiency of the evidence and also asserts that he

---

[17] *Gadson v. State*, 223 Ga. App. 342, 343 (1) (477 SE2d 598) (1996).

[1] At Callahan's behest, his appellate counsel was replaced and Eric Norris was then appointed. During a hearing on the motion for new trial, Callahan discharged Norris and elected to proceed pro se. After Callahan filed a writ of mandamus, the trial judge voluntarily recused himself.

was denied effective assistance of counsel. Callahan further contends that the trial court gave an incorrect charge to the jury and that constitutional guarantees against double jeopardy and illegal search and seizure were abrogated. Finally, he claims the prosecutor engaged in misconduct during his closing argument by referring to facts not in evidence. Finding no merit to any of these issues, we affirm.

On appeal, the evidence must be viewed in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence.[2] So construed, the evidence establishes that on the afternoon of April 24, 1998, Callahan entered an elevator with two young women (Jessica Booth and R. H.) at a downtown Athens parking deck. Booth exited at the second floor, leaving Callahan alone with the victim. After exiting at the third floor, R. H. went to her car, followed by Callahan. As she started to enter her vehicle, Callahan suddenly grabbed her from behind and shoved her into the car. When she began to scream, Callahan extracted a handgun from his right pocket and warned her to be quiet because he did not want to have to hurt her. He instructed her to drive him to "Athens Regency," by which he meant Athens Regional Hospital. While en route Callahan, sitting directly behind R. H. and still armed with the pistol, told her that he needed money and would have to rob someone to get it. After Callahan demanded money, she gave him $11, all the cash she had. The victim testified that she would not have given him the money if he had not demanded it from her. As to the whereabouts of the gun while she was driving, she explained, "[h]e made me believe that it was in my back. But I could not see because he was directly behind me." She testified that she was scared of being hurt because "[w]ith that gun I wasn't in control. He had the gun." After warning her not to contact police and threatening to hurt her if she did so, Callahan exited her vehicle at the hospital. The victim immediately fled to seek help.

From surveillance cameras filming the parking deck, investigators obtained a photograph of the perpetrator and arranged for its local publication. Two days after the crimes, a flyer with the perpetrator's photograph appeared in a local newspaper. The flyer described the incident and asked for help from the public in identifying the man. After seeing a newspaper, Booth realized that she was being sought as a witness and contacted police. From a photographic lineup, Booth selected a photo of Callahan. When shown the same array, R. H. said that number three "most closely resembles the guy that attacked me." Number three, a photograph of Callahan with his head shaven, was taken four days after the crimes. Both women iden-

---

[2] *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998).

tified Callahan at trial. While executing a search warrant, investigators confiscated a shirt, some pants, a belt, and sunglasses belonging to Callahan. R. H. recognized the sunglasses and pants. Both women believed that the shirt exhibited at trial was the same one he wore that day. The jury watched the surveillance videotape. According to Sergeant Mark Durham, Callahan was the male seen on the videotape at four separate times: 3:21, 3:39, 3:47, and 4:02 p.m.

Prior to trial, Callahan sought to suppress incriminating remarks he made while in custody. At a *Jackson-Denno* hearing on the admissibility of the statement, Sergeant Durham testified that after being advised of his *Miranda* rights, Callahan agreed to speak with the officers. Durham testified that during the course of the interview, after initially denying any involvement, "he somewhat took me by surprise and startled me when he stood up all the sudden and said, 'okay, I'm going to go ahead and tell y'all what happened.'" Callahan then implicated himself in the armed robbery and kidnapping.

At trial, Sergeant Durham repeated much of this testimony. He explained that when shown two photographs taken from the videotape at the parking deck, Callahan identified himself saying, "that's me in the pictures," recounting that he was there to get a Coke from the vending machine. When shown pictures of the victim's car, Callahan admitted sitting directly behind the driver in a "similar car." Callahan offered information not otherwise publicly known — that the victim was planning to leave on a trip, that the perpetrator had referred to the hospital as "Athens Regency," that the victim had $11, and the exact location where the perpetrator had exited the victim's car. Finding that Callahan knowingly and voluntarily waived his rights, the trial court denied the motion to suppress.

1. Callahan claims that there was "insufficient credible evidence" and argues that his conviction was the result of perjured testimony and falsified documents. The victim and a witness, however, identified Callahan as the man on the elevator with them and as the person appearing on the surveillance video taken at the parking deck. Callahan implicated himself in the crimes when he admitted that he appeared in the photographs created from the surveillance tape. Callahan voluntarily confessed to the crimes and provided specific details known only to the perpetrator. His teenage son identified Callahan as the person in Exhibit 18, a photograph created from the surveillance videotape. During the ordeal, the victim testified that she had been afraid and upset, but cooperated and "tried to compose myself so I wouldn't get hurt." This evidence was sufficient to enable a rational trier of fact to find Callahan guilty of kidnapping, armed

robbery, and hijacking a motor vehicle.[3]

2. Listing 14 purported failures, Callahan contends that he was denied effective assistance of counsel at trial.

In reviewing a trial court's ruling on a claim of ineffective assistance of counsel, the standard is whether the trial court clearly erred in finding either that counsel's performance fell within an objective standard of reasonableness or that there was no reasonable probability that the results of the trial would have been different but for trial counsel's errors.[4] In other words, to prevail on this claim, an appellant must show not only that his trial counsel's performance was deficient but also that the deficient performance prejudiced his defense.[5]

Here, in denying the amended motion for new trial, the court expressly decided that the "Defendant failed to establish that his trial counsel's performance was deficient, nor did Defendant provide sufficient evidence to support the numerous other grounds asserted in his Motion." At the hearing addressing the ineffective assistance claim, Callahan raised ten purported errors by his trial counsel. In his appellate brief Callahan seeks to expand the scope of his ineffectiveness claim to add several additional claims of error. This he cannot do, for grounds not timely raised below are foreclosed.[6] We consider only the grounds that were argued at the trial level.

(a) Arguing that the underlying affidavit was not founded on probable cause, Callahan contends that his trial counsel failed to seek to suppress two search warrants. From the execution of the search warrant at Callahan's residence, investigators obtained Callahan's sunglasses, three braided leather belts, and two pairs of solid green pants. Relying on the other warrant, police searched a jail locker and removed and photographed Callahan's shirt, which Booth testified looked like the shirt worn by the perpetrator.

At trial, counsel argued that the evidence obtained during the execution of the warrants should be excluded because the affidavit, authored by Sergeant Durham, lacked probable cause. When asked to explain why a written motion to suppress had not been filed, trial counsel explained that he had considered that option but "I did not think I had grounds. Out of an abundance of caution in order to protect Mr. Callahan's rights on review — I want to make sure I've preserved that ground for any counsel down the road who thinks maybe I should have done that."

Callahan alleges that Sergeant Durham perjured himself in his

---

[3] See *Anderson v. State*, 246 Ga. App. 189, 190 (1) (539 SE2d 879) (2000).

[4] *Hayes v. State*, 262 Ga. 881, 883 (3) (426 SE2d 886) (1993).

[5] *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).

[6] *McCant v. State*, 234 Ga. App. 433, 435-436 (2) (506 SE2d 917) (1998).

affidavit and also claims that his trial counsel committed perjury at the motion hearing while being questioned about the search warrants. Callahan failed, however, to offer any probative admissible evidence to substantiate either allegation. Therefore, Callahan has not established the requisite deficiency and prejudice needed for reversal.[7]

(b) Callahan contends that his counsel was ineffective for failing to raise an issue about the authentication of the videotape taken at the parking deck.

Before trial, defense counsel and the State entered into a stipulation about the surveillance videotape. That document provides in part:

> Both parties have spoken with Gary Slaton of the Athens-Clarke County Parking Services and agree that he would testify under oath that the videotape recorder that was recording the Parking Deck during the noted time was not operated by an individual but was running continuously, that the videotape recorder was functioning properly, that the videotape provides the time for the desired period, and that he personally stopped the videotape from recording, removed the videotape and turned it over to police investigators. The parties agree that Gary Slaton is not a witness to the incident that occurred in this action.

Since Callahan has offered no evidence to establish that Slaton would not have testified to these facts or that any of these facts were not true, it would be utter speculation to say the evidence would not otherwise have been admitted or that the outcome of the trial would have been different but for this stipulation, especially since Callahan identified himself in photographs created from the tape. Nor can it be assumed that the decision to enter into the stipulation was not a matter of trial strategy and tactics.[8]

(c) Callahan claims that his trial counsel failed to move for a mistrial when the prosecutor injected newly discovered evidence into his closing argument by mentioning a bag and gun at the courthouse. He asserts that the argument constituted prosecutorial misconduct.

A charge of prosecutorial misconduct is serious and is not to be made lightly; "having raised it, appellant has the duty to prove it by the record and by legal authority."[9] This Callahan failed to do. Two witnesses testified that Callahan was in Athens-Clarke County State

---

[7] See *Brewer*, supra, 224 Ga. App. at 658 (2).

[8] See *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

[9] *Meredith v. State*, 211 Ga. App. 213, 215 (4) (438 SE2d 644) (1993).

Court on the afternoon of the crimes. The defense tried to establish that Callahan could not have been the perpetrator because he was in court or in a meeting with his attorney or did not have a gun that day. The court reporter testified, however, that she had entered a notation that calendar call ended that day at 2:55 p.m. The deputy clerk also testified that Callahan had been in court that afternoon and confirmed that he had hair on his head at the time. On cross-examination she was asked whether anyone other than the deputies was allowed in the courthouse with a gun. Defense counsel also asked Sergeant Durham, "Is there any way Victor Callahan could have gotten in and out of court on April 24, 1998 without passing through a metal detector?"

During closing argument, the prosecutor pointed out that a firearm could have been stashed outside the courthouse or contained in a paper sack then placed into a lock box outside the metal detectors. At that point Callahan, who had replaced his trial counsel and conducted his own closing argument, interposed an objection to this argument as being "only mere speculation." After the trial court overruled the objection, his defense counsel then objected. Callahan plainly opened the door to the issue by asking the deputy clerk and the lead investigator about gaining entry to the courthouse while having a gun and about the process for passing through the metal detectors. No prosecutorial misconduct has been shown. Since the trial court's finding that Callahan was not denied effective assistance of counsel was not clearly erroneous, it must be affirmed.[10]

3. Callahan's contention that the trial court erred in failing to charge on the lesser included offense of robbery by intimidation lacks merit. First, Callahan submitted no written request for such a charge. "A charge on a lesser included offense is waived in the absence of a written request."[11] Second, even if properly requested, an instruction on the lesser included offense of robbery by intimidation is not required when all evidence shows that the robbery occurred, as here, at gunpoint.[12] The victim described the handgun that Callahan pointed at her, recalled his repeated threats, and testified that while she was driving, "he made me believe that [the gun] was in my back." Therefore, a charge on robbery by intimidation was not demanded by the evidence. Callahan's denials of having been at the parking deck or of having any involvement in the crimes do not alter this outcome.

---

[10] *Kelly v. State*, 267 Ga. 252, 253 (2) (477 SE2d 110) (1996); see *Callahan v. State*, 249 Ga. App. 108, 111 (3) (547 SE2d 741) (2001).

[11] (Citation and punctuation omitted.) *Rogers v. State*, 247 Ga. App. 219, 222 (4) (543 SE2d 81) (2000).

[12] *Lightfoot v. State*, 227 Ga. App. 605, 606 (490 SE2d 177) (1997).

Callahan's other claims that the jury charge on identification impermissibly shifted the burden of proof and that the trial court expressed an opinion as to his guilt are simply not borne out by the record.[13]

4. Callahan asserts that the trial court erred by refusing to disallow in-court identification because the identification procedures used by police were so suggestive that they rendered any subsequent identification unreliable.

A conviction based on eyewitness identification at trial following a questionable pre-trial identification will be set aside only if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification.[14] Even assuming arguendo that there are imperfections in the composition of this photographic lineup, we hold that they do not create the kind of suggestiveness as would inexorably lead the viewer toward the conclusion that Callahan was the perpetrator.[15] The trial court's determination that the lineup was not impermissibly suggestive was not clearly erroneous.

5. Notwithstanding Callahan's claim to the contrary, no violation of the Fourth Amendment has been shown. The searches of the jail locker and his residence were both conducted pursuant to lawful warrants. No evidence proves otherwise.

6. Callahan mistakenly argues that carjacking was a lesser included offense in armed robbery. As a matter of law, the crime of motor vehicle hijacking does not merge with any other offense.[16]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED JUNE 25, 2001.

Victor E. Callahan, *pro se.*
*Kenneth W. Mauldin, District Attorney*, for appellee.

---

[13] See *Callahan*, supra, 249 Ga. App. at 110 (2).
[14] *Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999).
[15] See *Karim v. State*, 244 Ga. App. 282, 286 (2) (535 SE2d 296) (2000).
[16] OCGA § 16-5-44.1 (d); see *Campbell v. State*, 223 Ga. App. 484, 485 (2) (477 SE2d 905) (1996).