## A08A1876. WALKER v. THE STATE.
### (675 SE2d 270)

MIKELL, Judge.

This child molestation case involves one defendant, Ozell Walker, and three female victims, K. T., J. W., and C. E. Counts 1 through 6 of the indictment against Walker charged that he committed crimes against K. T., which included rape (Count 1), aggravated sexual battery (Count 2), aggravated child molestation (Count 3), and child molestation (Counts 4, 5, and 6). Walker was convicted on Counts 3, 4, and 6, and on the lesser included charges of child molestation on Count 1, and sexual battery on Counts 2 and 5. Count 7 (aggravated child molestation) and Count 8 (child molestation) alleged crimes against J. W. Walker was acquitted of Count 7 and convicted of Count 8. Count 9 of the indictment charged Walker with

---

child molestation in connection with the third victim, C. E. Walker was convicted on Count 9, and was sentenced to a total of 110 years to serve. On appeal, Walker argues that he received ineffective assistance of counsel and that the trial court erred when it denied his five motions for mistrial. We reverse Walker's conviction on Count 8 on the grounds that he received ineffective assistance of counsel but affirm the remaining convictions.

> On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. This Court does not weigh the evidence or determine witness credibility, but only determines whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient under *Jackson v. Virginia.*[1] We uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

So viewed, the record shows that between 1999 and 2004, Walker sexually abused his stepdaughter, K. T., her cousin, J. W., and K. T.'s best friend, C. E. K. T., who was sixteen years old at the time of trial, testified that Walker began to sexually abuse her when she was seven years old. K. T. testified that the abuse, which occurred at night while her mother was working, began with Walker rubbing on her thighs, rear end, and chest; that Walker put his fingers in her vagina; that he inserted a pencil in her vagina on one occasion; and that they watched pornographic videos showing adults engaged in oral sex. K. T. recalled that by the time she was nine years old, Walker made her engage in oral sex while the pornographic movies played and that they engaged in intercourse once when she was ten years old, which caused vaginal bleeding. After that incident, the oral sex continued until she was 14 years old. K. T. never told her mother about the abuse but told her cousin, J. W.

J. W., who was 15 years old at the time of trial, is Walker's niece. J. W. testified that when she was 12 years old, she was on the phone with a boy at K. T.'s house, and Walker told her that she should not be talking to boys and that she should lose her virginity to him; that when she was 13 years old, Walker told her he wanted her to touch his penis and put his hands under her clothes and inserted his finger into her vagina as he tried to talk her into having intercourse; that he put his mouth on her vagina and tried to force her to touch his penis with her mouth and her hand; and that he forced her to bend over on the couch and inserted his penis into her rear end. J. W.

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Footnotes omitted.) *Nguyen v. State,* 294 Ga. App. 67 (668 SE2d 514) (2008).

recalled that the assault stopped when Walker heard K. T. get out of the shower. J. W. testified that she told K. T. what happened immediately and told her mother and her aunts about the assault approximately a month later.

C. E., who was 16 years old at the time of trial, was K. T.'s close friend. C. E. testified that one night when she slept at K. T.'s house, she was awakened by Walker putting his hand inside her shirt and trying to unzip her shorts. According to C. E., she told K. T. what happened, and K. T. started to cry and apologized for Walker's conduct. On the next morning, Walker tried to kiss C. E. and held her down on the couch as she tried to get up. C. E. also recalled that Walker made comments about sex to her. C. E. did not return to K. T.'s house after the incident.

1. In his first enumerated error, Walker raises several ineffectiveness claims. Specifically, he argues that trial counsel was not prepared for trial and failed to fully investigate the case, that he failed to object to certain testimony of Ravice Jefferson and Detective Moore, that he failed to ask Rhonda Cook her opinion about Walker's veracity, and that trial counsel failed to object to the admissibility of a prior conviction.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* [*v. Washington*] test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[3]

(a) *Preparation for trial*. Walker argues that trial counsel was inadequately prepared for trial because he visited Walker two times in jail and did not investigate two prior false reports filed by one of the alleged victims. Walker also argues that trial counsel never explained to him how the trial would proceed. Trial counsel testified that he spent at least 15 hours with Walker and that he met with him

---

[3] (Citations and punctuation omitted.) *Hudson v. State*, 284 Ga. 595, 597-598 (5) (669 SE2d 94) (2008), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

at the jail several times. Trial counsel also testified that he retained a private investigator to assist him; that he met with Walker's family members; and that he had a good relationship with Walker. Trial counsel acknowledged that during Walker's trial, he received a bar complaint that had been filed by Walker, but that he brought it to the court's attention and Walker apologized and assured the court and trial counsel that he was satisfied with the representation that he was receiving.

Regarding the claim that trial counsel failed to investigate false reports filed by one of the victims, trial counsel testified that he did not recall that Walker told him anything about false reports and that if Walker had mentioned the reports, he would have investigated them. Walker claims that he never received discovery, but trial counsel testified that he thought the discovery was mailed to Walker at the jail. Walker argues that trial counsel did not talk to several witnesses. Trial counsel testified that he did not recall any witnesses that Walker asked him to call prior to trial but would have contacted any witnesses suggested to him. Trial counsel did recall that Walker brought up the names of some out-of-state witnesses on the day of trial.

As to the time spent preparing for the trial as well as the claim that Walker asked trial counsel to investigate the false reports, "[t]he trial court was authorized to believe counsel's testimony over [Walker's]."[4] Also, Walker did not make the required proffer regarding the testimony of the witnesses he now claims should have been interviewed.[5] Consequently, "[Walker] has failed to show how these deficiencies prejudiced him so that there was a reasonable likelihood that, but for the deficiencies, the outcome of his trial would have been different. Both prongs of the *Strickland* test must be satisfied."[6]

(b) *Testimony of Ravice Jefferson.* Ravice Jefferson, who is Walker's sister and J. W.'s aunt, testified that the family was on vacation in Florida and J. W. was not behaving normally. When Jefferson talked to J. W. about her conduct, J. W. told her that Walker wanted to have sex with her and started crying. Jefferson then testified as follows: "And I'm looking at her and I know her. I'm like now this child is telling me the truth." Defense counsel did not object, and Walker argues that the failure to do so constituted ineffective assistance of counsel.

---

[4] (Citation omitted.) *McDaniel v. State*, 279 Ga. 801, 802 (2) (a) (621 SE2d 424) (2005).
[5] See *Hampton v. State*, 279 Ga. 625, 627-628 (4) (619 SE2d 616) (2005).
[6] (Citations omitted.) *Smith v. State*, 282 Ga. 388, 389 (1) (651 SE2d 28) (2007).

Although Walker cites no authority in support of his position, we agree that the testimony was improper and that trial counsel should have objected.

> The credibility of a witness, including a victim witness, is a matter for the jury's determination under proper instruction from the court. OCGA § 24-9-80. It is well established that in no circumstance may a witness'[s] credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth.[7]

In cases where we have affirmed convictions despite this type of improper testimony, there has been other evidence of guilt[8] or other testimony which minimized the effect of the improper testimony.[9] In this case, Walker denied that he touched J. W. and there was no evidence, other than J. W.'s testimony, that the crime occurred. Accordingly, we cannot conclude that but for counsel's deficient performance, the outcome of this trial on Count 8 (child molestation) involving J. W. would not have been different. Therefore, we reverse Walker's conviction on this count.[10] It follows that we need not address Walker's other claim of ineffectiveness that was based upon counsel's conduct during Jefferson's testimony.

(c) *Testimony of Detective Moore*. Detective Moore testified that he investigated Walker and that he was given consent to search the residence by K. T.'s mother. During the search, he located videotapes that he testified were "pornographic." Walker argues that the issue of whether the tapes were pornographic belonged to the jury and that trial counsel's failure to object to Moore's opinion about their content constituted ineffective assistance of counsel. We find no error.

The record shows that Moore testified that he reviewed portions of the videotapes and vividly described the conduct shown in the videotapes to include oral sex, intercourse, and anal sex. Pretermitting whether trial counsel's failure to object constituted deficient performance, we cannot conclude that the outcome of the trial would

---

[7] (Citation omitted.) *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995) (conviction reversed where grandmother improperly bolstered victim's credibility).

[8] *Cline v. State*, 224 Ga. App. 235, 236-237 (2) (480 SE2d 269) (1997) (testimony that victim was credible was improper but no reversal required because defendant admitted he touched victim's vaginal area).

[9] *Stamey v. State*, 194 Ga. App. 305, 306 (1) (a) (390 SE2d 409) (1990) (social worker's testimony that victim was telling the truth was superfluous but harmless where social worker also recited "to exhaustion" the criteria for determining the truthfulness of pre-adolescents, from which the jury could determine credibility for itself).

[10] Since Walker's sentence on Count 8 was to run consecutive to that imposed on Count 6, the effect of the reversal is to reduce the time served in prison by five years.

have changed since there was evidence from which the jury could have determined on its own that the videotapes were pornographic.[11] Accordingly, this claim of error fails.

(d) *Testimony of Rhonda Cook*. Walker complains that trial counsel was ineffective when he asked Rhonda Cook if she had an opinion about Walker's veracity but then failed to ask her to share that opinion. Walker cites no authority in support of his argument. Nonetheless, the record belies Walker's claim. It shows that Cook did state her opinion of Walker's veracity, when she stated that she never had a reason to doubt him.[12]

(e) *Prior conviction*. Walker did not raise below trial counsel's ineffectiveness in failing to object to Walker's prior conviction for reproducing recorded material. Walker cannot expand the scope of his ineffectiveness claim to add claims not raised below.[13] "We consider only the grounds that were argued at the trial level."[14]

2. Walker contends that the trial court erred when it denied his five motions for mistrial. "We review the denial of a motion for a mistrial for abuse of discretion, and will reverse only if a mistrial is essential to the preservation of the defendant's right to a fair trial."[15] For reasons set forth below, we find no abuse of discretion.

(a) Four of Walker's motions for mistrial were connected with testimony that he had been to jail and had a prior felony conviction. K. T. made the first reference to Walker having been in jail. Defense counsel argued that the comment impermissibly injected Walker's character into the trial. The jury exited the courtroom and a conference was held about the comment. After the trial court concluded that it would deny the motion for mistrial, the trial judge asked counsel if he wished the court to give a curative instruction and trial counsel declined. The second motion for mistrial was made after K. T. commented that she called the police after Walker beat her. The third motion for mistrial was made after Angela Roberson, Walker's daughter, testified, "I lived with my stepmom for a year after I found out that [Walker] was in jail." Walker also moved for a mistrial when Cook was asked about Walker's prior felony convictions.

---

[11] See generally *Stamey*, supra (jury had sufficient information aside from expert opinion testimony from which to make its decision).

[12] The state did not object to Cook's testimony on the grounds that it improperly bolstered Walker's credibility.

[13] *Callahan v. State*, 250 Ga. App. 193, 196 (2) (550 SE2d 757) (2001).

[14] Id.

[15] (Punctuation and footnote omitted.) *Seibert v. State*, 294 Ga. App. 202, 207 (3) (670 SE2d 109) (2008).

"[A] passing reference to a defendant's record does not put his character into issue."[16] It follows that a reference to the fact that the police were called did not warrant a mistrial. Moreover, in light of the admission of Walker's four prior convictions for motor vehicle theft, aggravated assault, possession of cocaine, and criminal reproduction and sale of recorded material, we find it unlikely that the references to jail and Walker's record deprived him of a fair trial.

(b) Walker argues that he moved for a mistrial based on similar transaction evidence. However, the page he references in the transcript does not reflect that he moved for a mistrial. "[I]t is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record. [Walker] has not met his burden and it is not the function of this court to cull the record on behalf of a party in search of instances of error."[17]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Adams, J., concur.*

DECIDED MARCH 10, 2009.

*Robert Greenwald*, for appellant.
*Daniel J. Porter, District Attorney, Mya Whitmore-Hinton, Assistant District Attorney*, for appellee.

---

[16] (Citation omitted.) *Junior v. State*, 282 Ga. 689, 692 (4) (653 SE2d 481) (2007). See also *Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000) ("mere mention that a defendant has been in jail falls short of placing his character at issue") (citation omitted).

[17] (Punctuation and footnote omitted.) *Wilbanks v. State*, 251 Ga. App. 248, 268 (19) (b) (554 SE2d 248) (2001).