**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 7, 2012**

# In the Court of Appeals of Georgia

A12A0962. GASTON v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Melvin Gaston was convicted of child molestation, aggravated child molestation, and aggravated sexual battery against R. C., who was his girlfriend's minor daughter. The trial court allowed R. C.'s father to give testimony that improperly bolstered her credibility, over the defense's objection and without a curative instruction or other corrective action. This was reversible error. There is no merit, however, in Gaston's arguments that the evidence was insufficient to support his convictions or that certain of his convictions must be merged for sentencing purposes. Finally, in light of our reversal of the convictions in this case, we do not address Gaston's argument that he received ineffective assistance of trial counsel.

Viewed in the light most favorable to the verdict, see *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004), the evidence showed that R. C. lived with her father in Texas and visited her mother in Georgia several times a year. R. C. visited her mother during the summer of 2006, when she was seven years old. One evening during that visit, Gaston, who was babysitting R. C., followed the girl into the bedroom of her mother's apartment, pushed her onto the bed, pulled down her pajama pants, and licked her genitals. R. C. told her mother what had happened as soon as the mother returned to the apartment, but the mother did nothing other than to talk to Gaston.

Upon returning to Texas at the end of the summer, R. C. told first her childcare provider and then her father what had happened. She also wrote and illustrated a story at school related to the incident. R. C. attended therapy sessions with a counselor, to whom she described the incident. She began biting her nails and having nightmares, and her grades at school fell. Although R. C.'s father contacted the police and an investigation was begun in Georgia, the investigation later was suspended with no action taken against Gaston.

While visiting her mother during the summer of 2008, R. C., then nine years old, began sleeping in her mother's bedroom because she was afraid of some spiders

2

she had seen in her own bedroom. Gaston was staying at the mother's apartment as well, and R. C. would sleep in the bed with her mother and Gaston. One night she awoke to feel Gaston's hand between her legs, touching her beneath her pajamas and underwear. She spoke to Gaston and he removed his hand. The next morning she told her mother what had happened, but her mother did nothing other than to say "okay." A few nights later, R. C. again awoke to feel Gaston's hand under her pajamas and underwear and his finger on and inside her vagina. She spoke to him and he stopped. Again, R. C. told her mother the following morning, and again her mother did nothing other than to say "okay."

Sometime during the fall of 2008, after R. C. returned to Texas, she revealed to relatives that Gaston had touched her inappropriately during her summer visit to Georgia. At the relatives' urging, R. C. then told her father what had occurred. R. C. did not return to Georgia to visit her mother after the summer of 2008.

After learning of the 2008 incidents, R. C.'s father contacted the police and an investigation was begun. As a part of the investigation, R. C. was interviewed by a child forensic interviewer in January 2009. In that interview, R. C. described what had occurred in 2006 and 2008. Two years later, R. C. gave another interview to the

child forensic interviewer, focusing on the specific time frame during which the incidents occurred.

R. C. continued to see her therapist after the summer of 2008, and she told her therapist about the sexual abuse. During therapy, she drew pictures and created artwork related to the incident. The therapist testified that R. C. manifested symptoms of sexual abuse such as having nightmares and flashbacks, exhibiting hypersensitivity, and expressing the need to keep all of the doors in the house closed.

1. Gaston argues that the court improperly allowed testimony that invaded the jury's province as the arbiter of witness credibility and amounted to improper bolstering of R. C. We agree.

During the state's direct examination of R. C.'s father, the following exchange occurred over the objections of Gaston's counsel:

Q. . . . [W]hen [R. C.] told you that she had been sexually molested by Melvin Gaston in 2006, did you believe her?

A. Yes.

. . .

Q. What was the answer[?]

4

A. Yes.

Q. You believed her, but then you sent her back in 2007 and 2008?

A. Yes.

Q. And why did you do that?

A. I was told to.

. . .

Q. Do you regret that decision?

A. I regret it.

. . .

Q. When [R. C.] told you that she had been molested by Melvin Gaston twice in 2008, did you believe her?

A. Yes.

The court overruled Gaston's contemporaneous objections to this testimony. It also denied Gaston's later motion for mistrial based on this testimony and declined to give a curative jury instruction.

"The credibility of a witness, including a victim witness, is a matter for the jury's determination under proper instruction from the court. It is well established that in no circumstance may a witness'[s] credibility be bolstered by the opinion of another . . . as to whether the witness is telling the truth." (Citations and punctuation omitted.) *Lagana v. State*, 219 Ga. App. 220, 221 (1) (464 SE2d 625) (1995); see OCGA § 24-9-80. The state argues that the father's testimony that he believed R. C.'s 2006 and 2008 outcries did not bolster her credibility because the testimony concerned his state of mind rather than the girl's truthfulness. This is not a meaningful distinction. See *Bly v. State*, 283 Ga. 453, 459 (3) (660 SE2d 713) (2008) (witness's testimony was improper bolstering where it "was necessarily predicated upon [his] belief in the veracity of [victim's] statements to him as repeated by [victim] at trial"); *Gooden v. State*, __ Ga. App. __ (1) (__ SE2d __) (Case No. A12A0390, decided May 18, 2012) (pediatrician's testimony that he believed victim had told him the truth about being sexually assaulted by her father was improper bolstering). "Testimony that another witness believes the victim impermissibly bolsters the credibility of the victim." (Citation omitted.) *Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999).

6

The state argues that Gaston should be precluded from objecting to the impermissible bolstering because, during opening statements, his counsel raised the issue of whether the father believed R. C. by questioning the father's decision to send the girl back to Georgia after her 2006 outcry. Specifically, the state points to the following assertion by Gaston's counsel: "You're going to hear from . . . the child's father. And [the prosecutor] is saying that [the father] felt he had to send the child back. Well, ask yourself this question: Who in their right mind is going to send . . ." (At that point the state objected to the opening statement as argumentative and Gaston's counsel did not revisit the topic.) Assuming without deciding that this single statement by defense counsel was enough to preclude Gaston from objecting to testimony on the issue of whether the father believed R. C.'s 2006 outcry, but see *Griffin v. State*, 267 Ga. 586, 587 (2) (481 SE2d 223) (1997) (state's repeated questions of its witness on redirect examination, which specifically pertained to witness's beliefs about defendant's credibility, were improper, even though state asked them in attempt to rehabilitate its witness in response to defense's cross examination questions), defense counsel's statement had no bearing at all upon whether the father believed R. C.'s 2008 outcry. The father did not "send the child

back" to Georgia after the 2008 outcry, and his bolstering of R. C.'s testimony regarding the 2008 incidents was impermissible.

The improper bolstering testimony requires reversal. "In cases where we have affirmed convictions despite this type of improper testimony, there has been other evidence of guilt or other testimony which minimized the effect of the improper testimony." (Citations omitted.) *Walker v. State*, 296 Ga. App. 531, 535 (1) (b) (675 SE2d 270) (2009). Here, however, R. C.'s credibility was central to the case against Gaston, in that the primary evidence that the crimes occurred was the testimony of R. C. and of the people to whom she had described the incidents. See *Lagana*, 219 Ga. App. at 221-222 (1) (error in admitting testimony bolstering victim's credibility was not harmless where the evidence against the defendant depended heavily upon the victim's credibility and was not overwhelming). There was no physical evidence corroborating R. C.'s various accounts. See *Orr v. State*, 262 Ga. App. 125, 129 (2) (584 SE2d 720) (2003) (where no physical evidence of rape was presented and only evidence against defendant was victim's testimony, any bolstering of that testimony was "extremely harmful" to defendant). R. C.'s various accounts contained inconsistencies. Compare *Williams v. State*, 266 Ga. App. 578, 582 (2) (597 SE2d 621) (2004) (improper bolstering of victim's credibility did not require reversal

8

where, among other things, victim's account remained consistent when repeated to several interviewers and also was consistent with her trial testimony). Gaston denied touching R. C. Compare *Cline v. State*, 224 Ga. App. 235, 237 (2) (480 SE2d 269) (1997) (improper bolstering testimony did not require reversal where defendant admitted to touching child victim's vaginal area on several occasions). Moreover, the court did not issue a curative instruction or take other corrective action to mitigate the impact of the bolstering testimony. Compare *Gooden*, ___ Ga. App. at ___ (1) (reversal not required where court took immediate curative action after witness gave improper testimony that he believed victim's account of sexual abuse).

Under these circumstances, we cannot conclude that the error in allowing the testimony improperly bolstering R. C.'s credibility was harmless. For this reason, we must reverse Gaston's convictions. See *Lagana*, 219 Ga. App. at 221-222 (1).

2. Gaston argues that the evidence was insufficient to support his convictions because the state failed to demonstrate venue in Gwinnett County, where the case was tried. We disagree and instead find that the evidence was sufficient and that he may be retried. See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

R. C. testified that the incidents in 2006 and 2008 occurred in her mother's apartment. Her mother testified that the apartment was on Annistown Road in

9

Snellville, Georgia. Her father testified that, to his knowledge, the mother's apartment was in Gwinnett County. And the investigating detective, a member of the Gwinnett County Police Department Special Victims Unit, testified that he determined that the mother's Annistown Road address was located in "Snellville, Georgia, and that is in Gwinnett County, Georgia." Gaston argues that other testimony from the detective regarding the mother's specific street address on Annistown Road was hearsay. But even without evidence of the specific street address, the jury could reasonably infer from the evidence viewed as a whole that the mother's apartment was located in Gwinnett County and, accordingly, the state proved venue in Gwinnett County beyond a reasonable doubt. See *State v. Prescott*, 290 Ga. 528, 529-530 (722 SE2d 738) (2012); *Chapman v. State*, 275 Ga. 314, 317-318 (4) (565 SE2d 442) (2002); *West v. State*, 296 Ga. App. 58, 59-60 (1) (673 SE2d 558) (2009).

3. Gaston argues that his conviction for child molestation should have merged into his conviction for aggravated sexual battery. Because this issue is likely to recur if Gaston is found guilty of the charged offenses on retrial, we address it here.

Under OCGA § 16-1-7 (a):

[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime.

10

He may not, however, be convicted of more than one crime if: (1) One crime is included in the other; or (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

"Under OCGA § 16-1-6 (1), a crime is 'included in' the other where it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the other crime." (Punctuation omitted.) *Drinkard v. Walker*, 281 Ga. 211, 213 (636 SE2d 530) (2006). Georgia has adopted the "required evidence" test to make this determination. Id. at 217. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the required evidence test considers "whether each provision requires proof of a fact which the other does not." (Citation and punctuation omitted.) Id. at 215. If so, then there are two offenses, and neither is "included in" the other. Id.

The indictment charged Gaston with child molestation in violation of OCGA § 16-6-4 (a) by, "between the 1st day of July, 2008, and the 15th day of August, 2008, . . . unlawfully perform[ing] an immoral and indecent act upon the person of [R. C.], a child under the age of sixteen (16) years, by touching her vagina, with his hand, with intent to arouse and satisfy the sexual desires of said accused. . . ." The indictment charged him with aggravated sexual battery in violation of OCGA § 16-6-

11

22.2 by, "between the 1st day of July, 2008[,] and the 15th day of August, 2008, . . . unlawfully intentionally penetrat[ing] with a foreign object, to wit: his finger, the sexual organ of [R. C.] without the consent of [R. C.]. . . ."

Gaston argues that the wording of his indictment could allow a jury to find that these crimes occurred on the same date as part of the same conduct. Even so, this does not require a finding that the crime of child molestation was included in the crime of aggravated sexual battery, as Gaston contends. The charged offense of child molestation required proof that Gaston committed an immoral and indecent act with the intent to arouse and satisfy his sexual desires, whereas the charged offense of aggravated sexual battery did not. And the charged offense of aggravated sexual battery required proof of penetration, whereas the charged offense of child molestation did not. Accordingly, the trial court was not required to merge these convictions for sentencing. See *Daniel v. State*, 292 Ga. App. 560, 565-566 (5) (665 SE2d 696) (2008).

4. We need not address Gaston's remaining claim of ineffective assistance of counsel, which is not likely to recur on retrial.

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*