**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 2, 2025**

# In the Court of Appeals of Georgia

A24A1811. FLORES-AVILA v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Rene Flores-Avila was convicted of aggravated sexual battery and two counts of child molestation for offenses committed against A. B. He argues on appeal that, among other things, his trial counsel was constitutionally ineffective for failing to object when A. B.'s mother testified that the girl "doesn't lie" and that "[s]he's telling the truth" about Flores-Avila committing the abuse.

The state concedes that the mother's testimony improperly bolstered A. B.'s credibility and so was objectionable. And A. B.'s credibility was central to the state's case against Flores-Avila, because the girl's statements in her outcry and trial testimony are the only evidence that Flores-Avila committed the charged crimes.

Under these circumstances, he has met his burden on appeal of showing both deficient performance and prejudice from trial counsel's failure to object to the bolstering testimony.

So we reverse the convictions, but because there was sufficient evidence to support them, Flores-Avila may be retried. We do not reach his remaining claims of error.

1. *Facts*

"Because [Flores-Avila] does not challenge the sufficiency of the evidence as to his convictions, and because we evaluate [his] claims of . . . ineffective assistance in the light of the overall strength of the [s]tate's case, we do not present [the evidence] in the light most favorable to the verdicts." *Williams v. State*, 318 Ga. 83, 84 n. 2 (896 SE2d 109) (2024). Instead, we summarize the trial evidence as follows.

Flores-Avila was the long-time boyfriend of A. B.'s grandmother; he lived with her and was considered to be a part of the family. A. B. regularly visited their home and called Flores-Avila "Abuelo," which translates in English to "Grandpa."

When A. B. was in the second grade, her mother discovered that the girl had been searching for and watching YouTube videos of naked people on her father's cell

phone. A. B.'s mother told her that she should not watch the videos and asked if someone at school had shown them to her. A. B. did not respond to the question, and her mother testified that she assumed the girl's silence meant assent, so she did not question A. B. further at that time.

One to two years later, the mother again questioned A. B. about the videos. She did so, the mother testified, because she realized she had "jumped to conclusions" as to how the girl had learned about them. A. B. told her mother that Flores-Avila had shown her the videos but denied that he had done anything else to her. From that point on, A. B. stopped visiting her grandmother's house and had no further contact with Flores-Avila.

The mother spoke with A. B. regularly about the importance of making an outcry if someone touched her inappropriately, and when A. B. was 11 years old the mother again questioned her about whether Flores-Avila had touched her inappropriately. In response to that questioning, A. B. told her mother that Flores-Avila had touched her.

Her mother notified the police and A. B. gave a recorded forensic interview. In the interview, which was played for the jury, A. B. described instances when Flores-

Avila showed her videos of people without clothing, touched and pinched her chest under her clothing, and put his fingers inside her vagina. The forensic interviewer, who was qualified as an expert witness, testified at trial that A. B. did not show signs of coaching.

A. B. made similar statements to a sexual assault nurse who examined her. The nurse, who was qualified as an expert witness, did not find physical evidence of sexual abuse but testified that the existence of such evidence would be unlikely given the passage of time.

A. B. testified at trial about the incidents, stating that they occurred at the grandmother's house when she was in the first grade. She testified that Flores-Avila showed her some videos of naked people. She testified that on a later occasion, she was outside the house with Flores-Avila when he told her to turn away from him and bend over; he then reached up her dress, put his hand inside her underwear, and put his fingers inside her vagina. And she testified that on yet another occasion, she was alone with Flores-Avila in a bedroom when he asked her to lie on the floor; he then pinched her chest. A. B. testified that after these instances she began trying to avoid

Flores-Avila. Her testimony was consistent with the statements she made in her forensic interview.

A. B. testified that she did not reveal the abuse when it happened because she "was confused and scared and . . . didn't understand." And she testified that she had denied the touching when her mother had first asked about it (after A. B. revealed that Flores-Avila had shown her the videos) because she "was still confused about it." She testified that she ultimately disclosed the abuse because she "just couldn't keep that in [her] heart anymore."

Flores-Avila testified at trial and denied committing any of the acts alleged by A. B. The girl's grandmother testified that she had never seen Flores- Avila act inappropriately with A. B., that A. B. always seemed happy to see and spend time with Flores-Avila, and that the girl never seemed upset or scared when she was visiting. The grandmother also contradicted some details of A. B.'s outcry: the girl's trial testimony that her grandmother had been upstairs watching television during one of the incidents, which the grandmother denied; and the girl's statement in her forensic interview that she had been jumping on a glass patio table immediately before that

incident, which the grandmother testified the girl could not have done without breaking the table.

The defense also elicited evidence that A. B.'s maternal grandfather had been accused of molesting and showing inappropriate videos to other children. The maternal grandfather lived in Costa Rica and had some, if infrequent, contact with A. B. and her family during the relevant time period. A. B.'s mother testified that A. B. also called her maternal grandfather "Abuelo," although the girl denied doing so. A. B. testified that she knew the difference between Flores-Avila and her maternal grandfather and that her maternal grandfather was not the person who had touched her or shown her inappropriate videos.

2. *Ineffective assistance of counsel for failing to object to the mother's improperly bolstering testimony*

Flores-Avila claims his trial counsel was ineffective for failing to object to testimony of A. B.'s mother, which he alleges — and the state concedes — improperly bolstered the girl's credibility. We agree.

"(A) witness . . . can never bolster the credibility of another witness as to whether the witness is telling the truth." *Brown v. State*, 302 Ga. 454, 460 (2) (b) (807

SE2d 369) (2017) (citation and punctuation omitted). See OCGA § 24-6-620. "Testimony that another witness believes the victim impermissibly bolsters the credibility of the victim." *Gaston v. State*, 317 Ga. App. 645, 648 (1) (731 SE2d 79) (2012) (citation and punctuation omitted). "What is forbidden is . . . testimony that directly addresses the credibility of the victim, i. e., 'I believe the victim; I think the victim is telling the truth.'" *Anderson v. State*, 337 Ga. App. 739, 748 (3) (c) (788 SE2d 831) (2016) (citation and punctuation omitted).

A. B.'s mother gave exactly that type of impermissibly bolstering testimony on direct examination. In response to the state's questions about whether A. B. had ever accused her maternal grandfather of showing her inappropriate videos or touching her inappropriately, the girl's mother testified:

> No. And if he did, he — my father would be sitting right there [at the defense table], not that man [Flores-Avila]. It would be my father. But that's not who she pointed out. It was him. And she can know the difference between people. *And my daughter doesn't lie. God says you will not bear false witness against your neighbor. She knows the severity of this. She knows.* And I know. Why would we put a man on trial, risk his life or take away his freedom if it wasn't true. Who would do that for fun? Do you not know the anguish and the pain that we've gone through? You've

torn our family. You took away my child's innocence. I trusted you. I loved you.

(Emphasis supplied.) When the prosecutor then asked the mother if she "put [her] daughter up to lying about [Flores-Avila]," the mother responded, "No. *She's telling the truth.*" (Emphasis supplied.) Flores-Avila's trial counsel, however, did not object to the bolstering testimony.

To prevail on his claim that his trial counsel rendered ineffective assistance when he failed to object, Flores-Avila

> must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. To satisfy the deficiency prong, [he] must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. . . . To satisfy the prejudice prong, [he] must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different.

*Robbins v. State*, 320 Ga. 19, 21-22 (3) (__ SE2d __) (2024) (citations and punctuation omitted). Flores-Avila has made these showings.

(a) *Deficiency prong*

8

Trial counsel's failure to object to this testimony constituted deficient performance. When asked if the failure was part of a trial strategy, trial counsel testified that he simply "missed" the objection. It is true that, even if trial counsel testifies that he did not act strategically, we must still consider whether, under the circumstances of the case, no competent attorney would have done the same. See *Simpson v. State*, 298 Ga. 314, 318-319 (4) (781 SE2d 762) (2016). But we see no strategic reason for doing so here (and, indeed, the state offers no such reason, focusing its appellate arguments on the prejudice prong instead).

As described above, there was no physical evidence in the case. A. B.'s statements about what happened — her outcries to her mother, forensic interview, and trial testimony — were the only evidence of Flores-Avila's guilt. At trial, the defense sought to challenge A. B.'s credibility in various ways. Trial counsel emphasized the delay in the girl's outcry, her initial denial that Flores-Avila had touched her inappropriately, and the role of the mother's repeated questioning in the girl's eventual change in her story. He elicited evidence that contradicted aspects of A. B.'s statements and testimony. And he elicited evidence that A. B.'s maternal

9

grandfather, who had also spent time with the girl, had been accused by others of similar actions — child molestation and showing children inappropriate videos.

Given the critical role of A. B.'s credibility to the state's case against Flores-Avila, and the focus of the defense on undermining that credibility, we are not persuaded that under the circumstances any competent attorney would have failed to object when the girl's mother testified that the girl "doesn't lie" and "is telling the truth" about being abused by Flores-Avila. So we conclude that Flores-Avila has shown deficient performance. See *Ward v. State*, 304 Ga. App. 517, 527 (5) (a) (696 SE2d 471) (2010) (holding that trial counsel was deficient for failing to object to the bolstering of a witness's credibility through testimony that the witness was "honest" and "became truthful" during an interrogation).

(b) *Prejudice prong*

We also find that Flores-Avila has demonstrated prejudice, which requires "a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Robbins v. State*, 320 Ga. at 22 (3) (citations and punctuation omitted).

For the reasons explained above, the bolstering evidence in this case was particularly harmful, given the centrality of A. B.'s testimony to the state's case; the focus of the defense on challenging the girl's credibility; and the lack of other, corroborating evidence of Flores-Avila's guilt. The specific circumstances of this case distinguish it from "cases where we have affirmed convictions despite th[e] type of improper testimony [seen in this case, where] there has been other evidence of guilt or other testimony which minimized the effect of the improper testimony." *Walker v. State*, 296 Ga. App. 531, 535 (1) (b) (675 SE2d 270) (2009) (citation omitted) (holding defendant had shown he was prejudiced by his trial counsel's failure to object to testimony that bolstered the credibility of a molestation victim, where the victim's testimony was the only evidence that the crime had occurred).

Instead, this case resembles many decisions in which we have held that a defendant was prejudiced by his trial counsel's failure to object to bolstering testimony. For example, in *Ward*, supra, we held that trial counsel was ineffective for failing to object to evidence that bolstered the credibility of a witness who had implicated the defendant in the crime — testimony that the witness had been "honest" and "bec[o]me truthful"; we noted the lack of overwhelming evidence of

the defendant's participation in the crime and that, "given trial counsel's strategy of attempting to show that [the witness] had in fact become not truthful when she implicated [the defendant], the evidence was directly damaging to the defense." *Ward*, 304 Ga. App. at 527-529 (5) (a), (b). Similarly, in *Walker*, supra, we held that the defendant had shown he was prejudiced by trial counsel's failure to object when a molestation victim's aunt testified about the child's outcry, "And I'm looking at her and I know her. I'm like now this child is telling me the truth." *Walker*, 296 Ga. App. at 534-535 (1) (b). We stressed in that case that the defendant "denied that he touched [the victim] and there was no evidence, other than [the victim's] testimony, that the crime occurred." Id. at 535 (1) (b). In *Orr v. State*, 262 Ga. App. 125, 129 (2), (3) (584 SE2d 720) (2003), we held that where no physical evidence of rape was presented and the only evidence against the defendant was the victim's testimony, "[a]ny bolstering of that critical testimony was extremely harmful to the defendant," and trial counsel was ineffective for failing to object to it. And in *Mann v. State*, 252 Ga. App. 70, 73-74 (1) (555 SE2d 527) (2001), we held that trial counsel's failure to object to the bolstering testimony of a child abuse investigator prejudiced the defendant because the evidence against the defendant was not overwhelming, the victim's various

12

statements were the only evidence linking the defendant to the crime, and the victim's "credibility was very much in issue. . . ."

We have made similar assessments of harm in cases directly challenging the admission of bolstering testimony. For example, in *Gaston v. State*, 317 Ga. App. 645, 648-649 (1) (731 SE2d 79) (2012), we held that the trial court's error in permitting bolstering testimony in a child molestation case over objection required reversal where the victim's credibility was central to the case against the defendant; there was no physical evidence corroborating the victim's accounts; the victim's accounts contained inconsistencies; and the defendant denied touching the victim. And in *Lagana v. State*, 219 Ga. App. 220, 221-222 (1) (464 SE2d 625) (1995), we held that the admission of evidence that bolstered a child victim's veracity was harmful error where, among other things, the "evidence against [the defendant] depended heavily upon the credibility of the victim and was not overwhelming . . . and no physical evidence was obtained corroborating the victim's claim regarding [the defendant]."

We are not persuaded by the state's various arguments that the failure to object to the bolstering was not prejudicial. The state minimizes the impact of the bolstering

because it came from a "presumptively-biased parent." But the cases the state cites for this proposition, *Zerbarini v. State*, 359 Ga. App. 153 (855 SE2d 87) (2021), and *Heard v. State*, 322 Ga. App. 37 (743 SE2d 597) (2013), are inapposite. We held in *Zerbarini* that "the fact that a father believes that his daughter is telling the truth [about molestation] is neither surprising nor damning to the defendant." *Zerbarini*, 359 Ga. App. at 164 (3). But in that case, unlike here, "there was other significant evidence of [the defendant's] guilt, including the testimony of other victims and witnesses[,]" which supported our conclusion "that it was unlikely that the bolstering testimony had much, if any, effect on the verdict." Id. And in *Heard,* we did not address the harm caused by bolstering because that issue was not properly before the appellate court; instead, we addressed the defendant's argument that a parent's testimony went to the ultimate issue and held that the opinion of a "presumptively-biased parent" as to a child's truthfulness did not impermissibly intrude upon the jury's role as factfinder. Id. at 39 (2).

The state also asserts that the failure to object to the bolstering was not prejudicial because the mother's statements were fleeting and not responsive to the prosecutor's questioning, but it cites no authority for the proposition that this is

dispositive under the particular circumstances of this case. And the state asserts that the trial court's proper instruction of the jury on its role in determining witness credibility cured the improper bolstering, but the cases it cites for this proposition either concerned different legal questions, see *Rouse v. State*, 290 Ga. App. 740, 741-743 (1) (660 SE2d 476) (2008) (holding that the defendant showed neither deficient performance nor prejudice related to trial counsel's failure to request a specific jury charge on bolstering that occurred despite trial counsel having successfully moved in limine to prevent it),[1] or did not involve situations where the victim's statements were the only evidence connecting the defendant with the offenses. See *Lamar v. State*, 297 Ga. 89, 92 (3) (772 SE2d 636) (2015) (alleged bolstering "was only implied" and there was substantial evidence of the defendant's guilt, including his own statement "that he had done 'some real hot sh-t' while leaving the scene of the crime and that he was later found with the murder weapon") (citation and punctuation omitted); *McNeil v. State*, 363 Ga. App. 548, 549-552 (2) (871 SE2d 303) (2022) (multiple witnesses

---

[1] This decision later was superseded by statute requiring a contemporaneous objection to a violation of a pretrial motion in limine. See *Williams v. Harvey*, 311 Ga. 439, 445 (1) (a) & n. 5 (858 SE2d 479) (2021).

testified to seeing the victim exhibit sexualized behaviors at a very young age and another person testified that as a child she had also been molested by the defendant).

In summary, we find that the most analogous cases — those involving trial counsel's failure to object to the improper bolstering of the credibility of a child's outcry and testimony, where there was no other evidence connecting the defendant to the charged crimes — support the conclusion that there is a reasonable probability (one sufficient to undermine confidence in the outcome) that, in the absence of counsel's deficient performance, the result of the trial would have been different. So Flores-Avila has demonstrated the prejudice necessary for a finding of ineffective assistance of trial counsel.

3. *Remaining enumerations of error*

Given our decision to reverse Flores-Avila's convictions due to his trial counsel's ineffective assistance for failing to object to the bolstering testimony of A. B.'s mother, we need not address his other claims of error, which assert that his trial counsel rendered ineffective assistance in other ways, that the trial court erred in sustaining various evidentiary objections made by the state, that the trial court erred in multiple ways that cumulatively require reversal, and that the trial court erred in

sentencing him. These claims either are moot or may be rendered moot on retrial, or otherwise rest on circumstances that may or may not recur on retrial.

*Judgment reversed. Mercier, C. J., and Rickman, J., concur.*