## A03A0254. ORR v. THE STATE.

(584 SE2d 720)

SMITH, Chief Judge.

Marcus Orlando Orr was indicted on charges of rape and statutory rape. A jury found him guilty of statutory rape but was unable to reach a verdict on the rape charge, and the trial court declared a mistrial as to rape. Following the denial of his amended motion for new trial, Orr appeals his conviction. He raises several challenges to the denial of his motion for new trial, all of which concern a detective's

---

[12] See *Long*, supra at 321 (3).

testimony at trial. He contends that it was error to admit the detective's testimony for various reasons, that his appointed trial counsel was ineffective in failing to object to this testimony, and that the trial court should have modified its jury charge to instruct the jury to disregard the detective's testimony. We agree that a portion of the detective's testimony was impermissible and that appointed counsel should have objected to it. Because we conclude that under these circumstances Orr was harmed by these errors, he is entitled to a new trial. We therefore reverse the judgment below and remand for a new trial.

Construed to support the jury's verdict, the evidence presented at trial showed that the victim, who was 15 on the date of the incident, was alone in her bedroom while her parents were at work. Orr, a family acquaintance who was 26 years old at the time, entered the house uninvited and walked to the victim's bedroom. He pushed the victim down on her bed, pulled down her panties, and "was on top of" her and "tried to" have intercourse with her. When the victim's father came home, Orr "jumped up and . . . shut the door" before hiding in the bedroom closet.

The victim's father came home from work to check on his daughter, as was his custom during the summer months. He entered the house through the unlocked back door, heard the victim's bedroom door slam, and became suspicious because that had never happened before. He asked his daughter to open her bedroom door, and she refused at first. When she did open the door she was sitting on her bed and appeared "nervous." The father smelled a "funny smell" that he described as "a sexual smell." He asked the victim about it, but she ran past him out of the house. The father "had a pretty good idea at that point that something was going on." He looked in the closet, discovered Orr, and "pulled him out." Orr insisted that the situation was not "like what you think it is" and that he was at the victim's home looking for his niece. He asked the victim's father not to call the police, and eventually the father reluctantly allowed him to leave.

The victim's father did call the victim's mother, however, and told her. She immediately called the police. The victim, who had run to the home of a relative, also called her mother. Her mother picked her up and brought her home. Police officers awaited them. After brief questioning, the family went to the police station, where a tape-recorded interview was conducted by Lieutenant Debbie Burnette of the Rome Police Department.

The victim initially denied that Orr had succeeded in penetrating her. But after speaking with her mother at Burnette's suggestion, the victim told Burnette that Orr had "partially penetrated her vagina with his penis." The victim was then taken to a sexual assault

center, where a rape kit was performed but failed to provide evidence of rape.

Orr testified that over the course of several weeks, the victim had begun paging him, using the number painted on the side of the truck he used in his lawn care business. According to Orr, on the morning of the incident, the victim called him and asked if he was "coming over." He testified that he agreed to do so and that the victim unlocked the back door for him and let him inside. According to Orr, he and the victim were just sitting on her bed, talking and flirting, when the victim's father came home and the victim told Orr to hide in her closet. He denied ever having sex or attempting to have sex with the victim.

1. Although Orr has not raised the general grounds, we find that the evidence presented at trial was sufficient to support the jury's verdict under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Orr contends that the trial court erred in denying his motion for new trial because Burnette impermissibly bolstered the credibility of the victim. We agree.

Burnette testified that the victim initially denied that Orr penetrated her but that she believed from the victim's mannerisms that the victim "was not being truthful . . . at the time." So Burnette turned off the tape, told the victim it was important that she be truthful, and asked the victim if she would be able to tell her mother the truth. The victim agreed to do so. The detective stepped outside and asked the victim's mother to enter the interview room. The detective then monitored the victim's conversation with her mother from a nearby electronics room to ensure its propriety. She heard the victim tell her mother that Orr had "partially penetrated" her, but this portion of the victim's statement was not taped. The detective testified that after she obtained this information from the victim, she "felt like that, in fact, a crime had been committed" and that further investigation was needed.

At the hearing on Orr's motion for new trial, the trial court ruled that Burnette's testimony was admissible and that therefore Orr's counsel could not have been ineffective in failing to object to the testimony. Orr argues that the trial court's findings on this issue were faulty in several respects.

OCGA § 16-6-3 (a) requires that the State prove sexual intercourse as an element of the crime. "Although penetration is an essential element of the crime of rape, it may be slight. Moreover, such penetration may be proved by indirect or circumstantial evidence." (Punctuation and footnotes omitted.) *Wallace v. State*, 253 Ga. App. 220, 222 (1) (b) (558 SE2d 773) (2002). Orr points out that the only evidence of penetration presented at trial was the victim's testimony

and her prior consistent statement. Her credibility was therefore a major issue. "The credibility of a witness, including a victim witness, is a matter for the jury's determination under proper instruction from the court. OCGA § 24-9-80. It is well established that in no circumstance may a witness'[s] credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth." (Citations and punctuation omitted.) *Lagana v. State*, 219 Ga. App. 220, 221 (464 SE2d 625) (1995).

Orr argues that here, Burnette impermissibly bolstered the victim's credibility on at least two occasions. First, Burnette testified that she believed the victim was being *untruthful* when she denied penetration. Second, Burnette testified that she believed a crime had been committed when the victim later admitted partial penetration, thereby implying that the victim was now being *truthful*. In its order denying Orr's amended motion for new trial, the trial court found that Burnette had not "directly commented" on the victim's credibility and that her testimony was "clearly admissible in the context in which it was offered to explain officer Burnette's conduct in moving from one step of the investigation to another." But

> only in rare instances will the "conduct" of an investigating officer need to be "explained," as in practically every case, the motive, intent, or state of mind of such an officer will not be "matters concerning which the truth must be found." At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something.

*Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984). This is not one of those "rare instances." Burnette's conduct was not in issue.

We do not agree with the trial court's assessment that the challenged testimony, as "prior statements of the testifying victim, consistent or inconsistent," was admissible under *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985), and *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982). It may be true, as the trial court found, that "portions of the criticized testimony of Officer Burnette reflect negatively on the credibility of the victim rather than the defendant." That does not, however, render their admission proper. Burnette's testimony regarding what the victim said during the interview was certainly admissible. But neither *Cuzzort* nor *Gibbons* permits a witness to testify whether he or she believed or disbelieved the victim.

And contrary to the trial court's finding, given the paucity of evidence presented at trial on the essential element of penetration, the admission of this testimony cannot have been harmless. While Bur-

nette's testimony that she believed the victim was not being truthful may have reflected somewhat negatively on the victim, the police officer was in this way suggesting that the victim's testimony that *no* penetration took place was not to be believed while her testimony that penetration *did* take place was to be believed. In just such cases the rule against one witness testifying as to the credibility of another has its fairest application. No physical evidence was presented. The only evidence against Orr was the victim's testimony. Any bolstering of that critical testimony was extremely harmful to the defendant.

3. Orr also maintains that he received ineffective assistance from his trial counsel. Orr's burden on this issue is to show that his counsel's performance was deficient and that but for counsel's deficiency a reasonable probability exists that the outcome of the trial would have been different. *Strickland v. Washington,* 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). See *Bowley v. State,* 261 Ga. 278, 280 (4) (404 SE2d 97) (1991). A trial court's finding that a defendant has received effective assistance of counsel will not be disturbed unless it is clearly erroneous. *Crider v. State,* 246 Ga. App. 765, 769 (4) (542 SE2d 163) (2000).

Orr's trial counsel did not object to Burnette's testimony. He testified at the hearing on the motion for new trial that it was not his trial strategy to permit any witness to testify as to his or her opinion about the defendant's guilt or innocence. Trial counsel testified, however, that he did not object to Burnette's testimony because he did not think it was "strictly speaking, opinion testimony as to the guilt or innocence of the defendant," he did not believe Burnette had commented on the victim's credibility, and in any event, he did not believe the testimony was harmful to Orr.

A strong presumption exists that trial counsel's performance falls within the wide range of reasonable professional assistance. *Jackson v. State,* 243 Ga. App. 289, 291 (3) (531 SE2d 747) (2000). Notwithstanding that presumption, because we have concluded that the testimony in issue was both inadmissible and harmful to Orr, counsel should have objected. We are constrained to agree with Orr that because he did not do so, trial counsel's performance was deficient and that but for that deficiency the outcome of the trial could very well have been different. Orr is therefore entitled to a new trial.

4. Because it is unlikely to recur at retrial, we need not address Orr's contention that the trial court erred in its charge on impeachment.

*Judgment reversed and case remanded. Ruffin, P. J., and Miller, J., concur.*

DECIDED JULY 3, 2003.

*Barry V. Smith*, for appellant.

*Bryant G. Speed II*, District Attorney, *Jason A. Lewis*, Assistant District Attorney, for appellee.