**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 27, 2014**

# In the Court of Appeals of Georgia

A14A0649. DOUGLAS v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Jeffery Douglas of three counts of armed robbery, two counts of aggravated assault, possession of a gun during the commission of a crime, carjacking, and misdemeanor obstruction of an officer. On appeal, he contends that the evidence was insufficient to sustain his convictions and that his trial counsel was ineffective for failing to investigate the criminal records of the three victims and impeaching them with that evidence on cross-examination. While we find the evidence sufficient for retrial, we agree that counsel's actions fell below an objective standard of reasonableness, and that a reasonable probability exists that if counsel had been effective Douglas would have been acquitted of all but the misdemeanor obstruction charge.[1] Accordingly, we reverse the armed robbery, aggravated assault,

---

[1] Douglas does not argue that his counsel's ineffectiveness led to a reasonable probability that he would have been acquitted of the charge of obstructing "a law enforcement officer in the lawful discharge of his official duties, by running after being told to stop," nor does he argue that the evidence on this charge was

use of a gun during the commission of a crime, and carjacking convictions and remand for further proceedings.

1. Douglas contends that the evidence was not sufficient to authorize the jury to find him guilty beyond a reasonable doubt because the evidence against him was circumstantial and failed to exclude any other reasonable hypothesis except his guilt.

> The appellate court reviews the evidence in the light most favorable to the verdict, giving deference to the jury's determination on the proper weight and credibility to be given the evidence. It is for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.

(Citations and punctuation omitted.) *Farris v. State*, 290 Ga. 323, 324 (1) (720 SE2d 604) (2012).

Viewed in that light, the evidence at trial showed that the three victims were close friends and met at Mosely Park one late afternoon. They sat on a bench and were "drinking, kicking, . . . [and] saying stuff" when two men walked up, both with guns raised. The robbers took the victims' cell phones and threw them away, then ordered the victims to lie face down on the ground. Victim One testified that the shorter robber — whom he identified at trial as Douglas — took his wallet, car keys,

---

insufficient. Accordingly, that conviction is affirmed.

2

and $500 cash, and the taller robber took $600 from Victim Two and $25 from Victim Three. The two robbers then drove off in the Victim One's car, but as soon as they pulled into the street they were hit by an oncoming car. The robbers jumped out of the car and began to run.

Victims One and Two began to chase the robbers, who turned and shot at the victims and then kept running. Victim Two got into his car and began to chase the robbers through the neighborhood as they ran between houses. The robbers eventually split up and ran into the woods. A witness to the crime also began to chase the robbers because he was very familiar with the neighborhood, but when they split off the witness lost sight of both robbers for a time.

Meanwhile, an off-duty officer in his personal vehicle drove by Victim One's wrecked car in the middle of the road and called 911 after one of the victims said he been robbed and shot at. The officer helped establish a perimeter and left after another officer responded to the 911 call. The responding officer talked to one of the victims, who described the robbers as two African American men, one in a "white gray-colored shirt and blue jeans with somewhat of a low haircut" and the other wearing "possibly a blue shirt with a fisherman's hat." The officer radioed the description to other officers in the area who had responded to the call.

A patrol officer heard the description of the robbers and began patrolling the area. He got out of his car to walk through the neighborhood and saw an African American man with a white grayish shirt and blue jeans walking across a back yard. That man was Douglas. Douglas began to walk "a lot faster" when he saw the officer. The witness from the park saw Douglas and told the officer, "That's him, that's him," meaning one of the robbers. The officer ran back behind a house and found Douglas squatting down underneath a deck and "burrowing into his pocket looking like he was looking for something."

The officer drew his gun, identified himself, and told Douglas to show his hands, but instead Douglas crawled out from under the deck and began to run away despite the officer's order to stop. Douglas jumped two fences but the officer caught up with him when he tripped and placed him under arrest. Douglas had $305 balled up in his pocket but no cell phones or gun. No money, cell phones, or weapons were found along the pathway of the chase.

The arresting officer placed Douglas in the back of another officer's patrol car, and testified that the three victims walked up to the car and said, "Oh, yeah, that's him; that's him; that's him right there." The other responding officer also testified that the victims identified Douglas when he was brought back to the park in the back

4

of a patrol car. Regardless of where the patrol car was located when the victims identified Douglas as the robber, the record is clear that he was under arrest in the back of a police car when they did so. Further, the witness who chased the robbers also identified Douglas as one of the robbers after his arrest.

When we review a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). The evidence as outlined above is sufficient to authorize the jury's verdict on the charges of three armed robberies, two aggravated assaults, possession of a firearm during the commission of a crime, carjacking, and misdemeanor obstruction of an officer. See *Range v. State*, 289 Ga. App. 727, 729 (2) (658 SE2d 245) (2008); *Dunn v. State*, 262 Ga. App. 643, 645 (1) (586 SE2d 352) (2003).

2. Douglas also contends that his trial counsel was ineffective for failing to investigate the victims' criminal histories even though the defense theory was that the victims misidentified Douglas as one of the robbers.

Ineffective assistance is a "deficient performance" by counsel resulting in "actual prejudice." *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). We strongly presume that trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and counsel's performance is evaluated without reference to hindsight. *Strickland v. Washington*, 466 U.S. 668, 689-690 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984). "The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). "A petitioner has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Head v. Hill*, 277 Ga. at 266 (VI).

A. *Deficient performance*. Douglas argues that his trial counsel's performance fell below an objective standard of reasonableness because, although his defense was that the victims identified the wrong person and only said they recognized him as one of the robbers after they saw him at a custodial show-up, trial counsel failed to investigate the victims' background and criminal histories.

6

Trial counsel is obliged to conduct a reasonable and thorough pretrial investigation, including locating and interviewing potential witnesses. *Tenorio v. State*, 261 Ga. App. 609, 612-613 (3) (583 SE2d 269) (2003). At the hearing on Douglas's motion for new trial, his trial counsel testified that Douglas's theory of defense was mistaken identity, and agreed that the case "hinged on the credibility of the three victims." When asked whether she had reviewed the victims' criminal history, counsel replied that while it was her policy to run a criminal background check and ask her investigator to see if there were any criminal charges pending, she apparently had not done so in this case or she would have cross-examined them about their prior convictions. When asked if she had any strategic reason not to introduce impeachment or bias evidence, counsel responded she did not, but "probably just mistakenly didn't get the criminal convictions or certified convictions in time or something."

> We acknowledge that

> [s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that

7

makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

(Citation and punctuation omitted.) *Wiggins v. Smith*, 539 U.S. 510, 521-522 (II) (A) (123 SCt 2527, 156 LE2d 471) (2003). See also *Poole v. State*, 291 Ga. 848, 858-859 (8) (734 SE2d 1) (2012) (trial counsel's decision to rely on his investigators' inspections of murder weapon resulted from reasoned strategic judgment, not inattention, and thus was not dereliction of duty to conduct reasonable investigation). "In determining whether the defendant has established that counsel's performance was constitutionally deficient, the court should keep in mind that counsel's function is to make the adversarial testing process work in the particular case." (Citation and punctuation omitted.) *Jowers v. State*, 260 Ga. 459, 462 (2) (396 SE2d 891) (1990).

In this case, "[t]rial counsel's performance was deficient because [s]he failed to obtain [the victims'] criminal records." *State v. Lamb*, 287 Ga. App. 389, 391-392 (1), (2) (651 SE2d 504) (2007), overruled on other grounds, *O'Neal v. State*, 285 Ga. 361, 363, n.4 (677 SE2d 90) (2009). Counsel admitted having no strategic reason not to investigate the three victims who identified Douglas as the robber, despite the fact that Douglas's main theory of defense was mistaken identity and the State relied

8

primarily on the victims' identification of Douglas as one of the robbers. "Counsel's failure to investigate is unreasonable where . . . it resulted from inattention and not from reasoned strategic judgment." *Terry v. Jenkins*, 280 Ga. 341, 347 (2) (c) (627 SE2d 7) (2006) (trial counsel's failure to investigate factual defense or obtain available testimony uncovered by habeas counsel was inconsistent with professional standards and unreasonable).[2]

B. *Actual prejudice*. To obtain relief, Douglas must also "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009), quoting *Strickland v. Washington*, 466 U. S. 668, 694 (104 SCt 2052, 80 LE2d 674) (1984). Again quoting *Strickland*, the *Miller* court noted that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Miller*, 285 Ga. at 286.

Douglas argues that an investigation into the victims' backgrounds would have revealed the existence of significant impeachment evidence, including prior felony

---

[2]We note that the State does not argue on appeal that trial counsel's performance was adequate, only that it was not prejudicial.

convictions and pending felony charges as of trial, and that confidence in his convictions is undermined because the State's case hinged on the victims' unimpeached identification of him. Further, misidentification was his sole defense. The State argues that the evidence of Douglas's guilt was "so overwhelming that there is no reasonable probability the outcome would have been more favorable had counsel done the things [Douglas] now claims counsel should have."

But other than identification of Douglas by a witness who lost sight of the robber while chasing him and by the victims following a one-on-one showup in the back of a police car two hours after the robbery,[3] no other evidence ties Douglas to the crimes. The witness testified that he chased the robbers from the park, but admitted losing sight of both of them for a period of time before pointing out Douglas walking through a neighborhood back yard to a responding officer .

---

[3]While identification testimony resulting from a one-on-one showup "is not necessarily inadmissible" and Douglas has not claimed his trial counsel was ineffective for failing to challenge his in-custody identification, the procedure is "inherently suggestive." (Citation and punctuation omitted.) *Butler v. State*, 290 Ga. 412, 414 (3) (721 SE2d 876) (2012). The fact that the victims identified Douglas when he was in custody in the back of a police car contributes to the conclusion that the evidence against him was not overwhelming and that therefore counsel's ineffective assistance was not harmless.

While Victim One testified at trial that he knew Douglas "from the streets," recognized him as he approached the group with his gun drawn, and told the responding officers that he knew one of the men who robbed him, he did not mention in the statement he wrote for the police on the night of the robbery that he knew the identity of the man who robbed him. While Victim One testified that he asked defendant during the robbery if he was really going to "do [him] like that," the other two victims testified that they never heard Victim One say he knew the robber during the crime. Victim Two testified at trial that he knew Douglas, but also did not mention that fact in his written statement. The patrol officer who responded to the scene testified that his report did not indicate that any of the victims said they knew the robber and that none of the other officers told him that Victim One had reported to them that he knew the robber.

The first responding officer testified that the victims described one of the robbers as wearing a "white gray-colored shirt" and the other was wearing a blue shirt and fisherman's hat. Before trial, the State's investigator showed the three victims the gray t-shirt and blue jeans Douglas had been wearing when he was arrested, and then identified them to the jury. Victims One and Three subsequently testified that one of the two robbers was wearing a gray t-shirt and blue jeans, although their descriptions

11

of the second robber's clothing varied from a light t-shirt and khaki shorts to a white t-shirt and jeans. Victim Two testified that both robbers were wearing white t-shirts and blue jeans, and described them the same way in his written statement. In his written statement Victim One described the robbers as a short man wearing a gray shirt and a tall man wearing a fisherman's hat, and Victim Three included no description of the robbers or their clothing in his written statement.

Regarding the stolen cash, Victim One testified that Douglas robbed him at gunpoint of $500, Victim Two testified that Douglas collected a total of $1,125 from the three victims, $600 cash from him, and $25 from Victim Three. Victim Three also testified that the robbers took five or six cell phones from the victims and ordered him to throw away another cell phone sitting on the side of the bench.

The witness who saw the robbery testified that all of the money taken from the victims was folded over flat, but the arresting officer found only $305 balled up in Douglas's pocket and no cell phones or gun. Both the witness and a responding officer who chased Douglas testified they found no money or weapons on the ground. While Victim Two testified that other people found money on the ground along the robbers' trail, he did not testify that he had personally found any money.

In light of this testimony, the victims' credibility in identifying Douglas as the man who robbed them was therefore a critical issue at trial. Trial counsel testified at the motion for new trial hearing that her theory of defense was that the victims were mistaken in identifying Douglas as one of the men who robbed them. Appellate counsel introduced evidence that, if trial counsel had investigated the victims' backgrounds, counsel would have discovered that the victims had been convicted of drug-related offenses and, most importantly, that two of the victims had major drug charges pending when they testified. On appeal, Douglas argues that if his trial counsel had not been deficient, she could have introduced three kinds of impeachment evidence against the victims at trial: impeachment with a prior felony conviction; impeachment regarding the nature of the victims' relationship; and impeachment for possible bias due to pending charges.

a. *Impeachment with a Prior Felony Conviction*. Victim Two was indicted for cocaine trafficking in Mosely Park in October 2002 and pled guilty to possession with intent to distribute in July 2003. Douglas was tried before the new Evidence Code went into effect in January 2013, and under former OCGA § 24-9-84.1 (a) (1), evidence that a witness had been convicted of a felony in the ten years preceding trial was admissible if the court determined that the probative value of admitting the

13

evidence outweighed its prejudicial effect to the witness. The introduction of evidence of a prior felony conviction is intended "to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness." *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982).

Victim Two's felony conviction was eight years old when Douglas was tried, and because the State's case against Douglas depended on the victims' identification of him as a robber, their credibility was a central issue. Therefore, Douglas contends, the trial court would have abused its discretion in failing to allow him to impeach Victim Two with a certified copy of his conviction. See *Walker v. State*, 294 Ga. 752, 755-756 (2) (b) (755 SE2d 790) (2014) (defendant claimed trial counsel was ineffective for failing to move to exclude evidence of defendant's felony conviction, but because defendant's credibility was central issue, trial court would not have abused its discretion by denying such a motion and therefore counsel was not ineffective for failing to make it). According to Douglas, the absence of an attempt to impeach Victim Two with a certified copy of his prior felony conviction tends to undermine confidence in the outcome of his trial.

b. *Relationship of the victims*. Douglas argues that the victims painted a "very wholesome and innocuous picture of their relationships and how they knew one another," but trial counsel testified at the motion for new trial hearing that she believed the men were involved in a drug transaction in the park the day they were robbed, based on their statements, the time of day, and the amount of cash they had on hand. If she had possessed evidence that they had prior felony drug convictions or pending drug charges, she testified, she would have advanced that theory on cross-examination. The evidence about the victims that was presented at the motion for new trial hearing could have been tendered at trial to support that theory, as Victims One and Three were arrested together in a drug bust in 2005 and Victims Two and Three were arrested together before trial and had pending drug charges against them when they testified against Douglas. If trial counsel had cross-examined the victims about the "true nature" of their relationships, Douglas argues, their credibility would have been negatively affected.

c. *Evidence of Pending Charges*. The Confrontation Clause of the Sixth Amendment guarantees a defendant in a criminal case the right to show the possible bias of a witness by cross-examining him concerning pending criminal charges against the witness for purposes of exposing a witness's motivation in testifying, such

15

as any bias, partiality, or an agreement between the government and the witness.

*Davis v. Alaska*, 415 U.S. 308, 315-317 (2) (94 SCt 1105, 39 LE2d 347) (1974);

*Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982).

> [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness. Whether or not such a deal existed is not crucial. What counts is whether the witness may be shading his testimony in an effort to please the prosecution. A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception.

(Citations and punctuation omitted.) *Hines*, 249 Ga. at 260 (2). See also *Manley v. State*, 287 Ga. 338, 346 (5) (698 SE2d 301) (2010) (co-indictee should have been allowed to question informant regarding the basis for his First Offender plea to show potential bias).

> It is true that an attempt to impeach a witness on the ground that he is a criminal must be supported by a conviction; that he merely has been charged with a crime is no proof that he is a criminal. But that is not to say that *pending* criminal charges are not relevant. On the contrary, the

16

> partiality of a witness may be exposed by proof that he hopes to benefit in related cases from his cooperation with the prosecution in this case. Such partiality is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.

(Citations and punctuation omitted; emphasis in original.) *Kinsman v. State*, 259 Ga. 89, 91 (7) (b) (376 SE2d 845) (1989).

Evidence of pending criminal charges is a "more particular attack on the witness' credibility,"and "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (Citations and punctuation omitted.) *Hines*, 249 Ga. at 260 (2). See *Hibbs v. State*, 299 Ga. App. 723, 724-727 (2), (3) (683 SE2d 329) (2009) (trial court committed harmful error in restricting cross-examination of juvenile who was in custody with pending juvenile charges against him when he made outcry against defendant, even though no charges were pending as of trial).

In this case, appellate counsel discovered upon investigation that Victims Two and Three had been arrested together 11 months before trial, when police executed a search warrant on two adjacent residences that uncovered a total of 1,040 grams of crack and powder cocaine, more than a pound of marijuana, and two handguns. Both victims were charged with theft by receiving a stolen gun and possession of a gun by

17

a felon; Victim Two was also charged with trafficking in cocaine and marijuana possession with intent to distribute, and Victim Three was also charged with marijuana possession. Additionally, Victim Three was arrested and indicted in June 2005 for possession of marijuana with intent to distribute after police executed a search warrant at a residence where Victim One was also located. Those charges appeared to be pending as of trial.

With this evidence, Douglas argues, trial counsel could have cross-examined the victims about whether they were biased toward helping the State in hopes of receiving a lighter sentence in their own pending cases. In fact, while Victim Two was initially charged with cocaine trafficking, four months after Douglas's trial the State nolle prossed Victim Two's cocaine trafficking charge, and the trial court allowed him to enter an *Alford* plea to possession of marijuana with intent to distribute, theft by receiving, and the firearms charges. The trial court sentenced him to five years, to serve one in custody, with the custodial portion commuted to time served, and suspended the two consecutive five-year sentences on the gun charges.

While the State argues on appeal that the evidence against Douglas was overwhelming, and therefore that any deficient performance by trial counsel was harmless error, in its closing argument at trial, the prosecutor focused almost entirely

18

on the credibility of the victims. He argued that the victims identified Douglas less than half an hour after the robbery[4] and that there was "absolutely no reason to believe they're not telling the truth." He continued, "Why would the three victims and [the witness] lie? . . . What does anybody have to gain by lying?" "There is no evidence of lying, no evidence of conspiracy, no evidence of mistaken identity," the State argued.

If trial counsel had not been deficient and had investigated the victims, she would have been entitled to cross-examine them about their pending criminal charges.

> While the trial court may exercise reasonable judgment in determining the extent of cross-examination on a particular subject, the trial court abuses its discretion and commits prejudicial error when it cuts off all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination.

*Beam v. State*, 265 Ga. 853, 856-857 (4) (463 SE2d 347) (1995).

Although the State characterizes the evidence against Douglas as "overwhelming," its proof consisted entirely of the eyewitness identification of Douglas by the three victims and a bystander who lost sight of the robbers while

---

[4]As noted previously, the State conceded in the motion for new trial hearing that the time lapse between the robbery and the victims' identification of Douglas was two hours.

19

chasing them. Considering that (1) Douglas's defense was that the victims identified the wrong person, (2) the responding police officers did not remember any of the victims saying they knew one of the robbers, (3) none of the victims' statements indicated that they knew either of the robbers, (4) the victims's description of the robbers' clothing (a gray-white t-shirt and blue jeans) was fairly generic, (5) the witness who chased the robbers lost sight of them, and (6) the victims and witness all identified Douglas from a one-on-one showup, we conclude that a reasonable probability — "a probability sufficient to undermine confidence in the outcome" — exists that but for trial counsel's unprofessional errors, the outcome of this trial would have been different. *Strickland*, 466 U.S. at 694. See also *Fedak v. State*, 304 Ga. App. 580, 585 (1) (696 SE2d 421) (2010) ("Although the [omitted] testimony would not have required the jury to acquit Fedak, his burden here is to show only a reasonable probability of a different outcome, not that a different outcome would have been certain or even more likely than not.") (Citations, punctuation, and footnotes omitted.)

Accordingly, while we affirm Douglas's conviction for obstructing an officer, we reverse his convictions for three counts of armed robbery, two counts of

20

aggravated assault, possession of a gun during the commission of a crime, and carjacking, and remand for a new trial.

*Judgment affirmed in part, reversed in part, and remanded for further proceedings. Boggs and Branch, JJ., concur.*