**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** http://www.gaappeals.us/rules

**November 18, 2016**

# In the Court of Appeals of Georgia

A16A0919. GILMER v. THE STATE.

McMILLIAN, Judge.

Darius Gilmer appeals from his convictions for child molestation and aggravated child molestation against then-11-year-old F. P., arguing that he received ineffective assistance of trial counsel and that the trial court erred in dismissing a juror during the trial. For the reasons that follow, we find no error and affirm.

Viewed in the light most favorable to the verdict, see *Douglas v. State*, 327 Ga. App. 792, 792 (1) (761 SE2d 180) (2014), the evidence shows that for several months in 2007, Gilmer had a relationship with F. P.'s mother. Gilmer sometimes stayed at the mother's apartment with F. P. and his younger brother, W. G., while the mother was at work. On several such occasions, Gilmer engaged in sexual contact with F. P. These incidents included Gilmer having F. P. use his hand to stroke Gilmer's

unclothed penis until Gilmer ejaculated; Gilmer penetrating F. P.'s anus with his penis while in the shower; and Gilmer touching F. P.'s penis while masturbating.

In 2008, the mother and the two boys moved to another state to live with a family friend. That friend began to suspect that F. P.'s brother, W. G., had been molested after W. G. inappropriately touched another child. She questioned both F. P. and W. G. separately, and both boys told her that they had been molested. They repeated their outcries in forensic interviews conducted by a law enforcement officer.

The indictment charged Gilmer with committing the offense of child molestation by touching F. P.'s penis with his hand and having F. P. touch his penis with his hand, and with committing the offense of aggravated child molestation by penetrating F. P.'s anus with his penis.[1] At trial, Gilmer was found guilty of both charges. After his motion for new trial, as amended, was heard and denied, he filed this appeal.

1. Although not enumerated as error, we find at the outset that the evidence recounted above was sufficient for the jury to find Gilmer guilty of these offenses under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99

---

[1] The indictment also charged Gilmer with an offense against W. G., but that charge was placed on the dead docket.

2

SCt 2781, 61 LE2d 560) (1979). See OCGA § 16-6-4 (a) (child molestation); OCGA § 16-6-4 (c) (defining aggravated child molestation).

2. In his first enumeration of error, Gilmer argues that trial counsel rendered ineffective assistance by: (1) failing to object to the bolstering testimony of the State's expert and the family friend who initially received the outcry; (2) failing to obtain and utilize DFCS and therapy records for the children; and (3) failing to obtain and introduce evidence of the mother's arrest for perjury. We discern no error in the trial court's denial of the motion for new trial on these grounds.

To prevail on his claim of ineffective assistance of trial counsel, Gilmer "must show both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different." *Daniel v. State*, 338 Ga. App. 389, 392 (3) (787 SE2d 281) (2016). "In reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo." *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014).

(a) Gilmer first argues that his counsel was deficient for, among other things, failing to object to testimony from two witnesses that improperly bolstered the

3

credibility of F. P. Our Evidence Code provides that "[t]he credibility of a witness shall be a matter to be determined by the trier of fact[.]" OCGA § 24-6-620.[2] "It is well established that a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury." (Citations omitted.) *Bly v. State*, 283 Ga. 453, 459 (3) (660 SE2d 713) (2008); see also *Walker v. State*, 296 Ga. App. 531, 535 (1) (b) (675 SE2d 270) (2009).

The state's expert witness, Anique Whitmore, testified at trial about F. P.'s use of the word "blowtorch" to describe his experience of the aggravated molestation during a forensic interview. When asked why "that kind of descriptive language [is] important in a disclosure of abuse," Whitmore responded:

> . . . [W]hen you look for the genuine nature of a child's response, you look for words that one would assume – feeling like a – if you got hit by a blowtorch what that might feel like. A child this age perhaps has never experienced anything like this before. That to them is how they describe that pain, that interaction, that force. For him, perhaps he saw a blowtorch and that's how he would – would relate that pain. So the – the

---

[2] Because this case was tried in 2013, Georgia's new Evidence Code applies. See Ga. L. 2011, p. 99, § 2.

4

spontaneity and the genuineness of that response, for me, adds credibility to what [F. P.] was saying.

We agree that this testimony constitutes improper bolstering. See *Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999) (expert witnesses may not testify regarding truthfulness or credibility). However, to establish his claim of ineffective assistance of counsel, Gilmer must also demonstrate that his trial counsel's failure to object to this testimony was constitutionally deficient. See *Ford v. State*, 298 Ga. 560, 566 (8) (783 SE2d 906) (2016). There is a "strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citation and punctuation omitted.) *Green v. State*, 291 Ga. 579, 581 (2) (731 SE2d 359) (2012). "[H]indsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim." (Citation and punctuation omitted.) *Simpson v. State*, 298 Ga. 314, 318 (4) (781 SE2d 762) (2016) (even where counsel rejected characterization of his performance as strategic, examination of his entire testimony shows his decisions were, in fact, strategic). See also *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014) ("Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds

5

for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them.") (citation and punctuation omitted).

Moreover, as explained by our Supreme Court,

we are not limited in our assessment of the objective reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did – whether for the same reasons given by the actual lawyer or different reasons entirely – the actual lawyer cannot be said to have performed in an objectively unreasonable way.

*Shaw v. State*, 292 Ga. 871, 875 (3) (a) n.7 (742 SE2d 707) (2013).

With respect to Whitmore's bolstering testimony, a review of the record reveals that a reasonable lawyer might have decided not to object and that such decision would fall within the realm of sound trial strategy. Whitmore was called as an expert witness by the State in forensic interviewing and forensic psychotherapy and was qualified without objection by trial counsel. On direct, Whitmore explained that she had not conducted the forensic interviews of the children, which had taken place in Kentucky. However, she testified at length regarding the nature of forensic interviews and various relevant factors to evaluate the interviews, including signs the victim has been coached, the use of leading questions, the child's suggestibility, rapport

6

building, and studies regarding why a child victim may or may not disclose sexual abuse to one individual versus another. Whitmore intimated that she was critical of the forensic interview several times, noting that "there were areas in which [she] would suggest adjusting," that there was confusion between the interviewer and the child at times, and that she might have asked certain questions "in a different way."

On cross-examination, trial counsel established that Whitmore had no personal knowledge whether the children had been molested and had not interviewed them. Trial counsel also was able to elicit that Whitmore was an experienced expert in this area and that she was critical of the way that the forensic interviews were conducted, including that she "would not give [the interviews] a higher – a very high grade"; some of the questions were leading and suggestive; the interviewer did not ask follow-up questions to ensure a full disclosure from the child; and the interviewer spent more time in building rapport with the child than drawing out details of the allegations.

It is clear from the face of the record that trial counsel's strategy was to co-opt Whitmore as his own expert witness to challenge the way that the forensic interviews were conducted. Under these circumstances, it would not have been unreasonable for counsel to decline to object to the bolstering testimony, inasmuch as it would draw

7

attention to an error Whitmore made in her testimony, which would be inconsistent with counsel's attempt to show that Whitmore was a qualified expert who had serious concerns with the forensic interviews. See *Jones v. State*, 292 Ga. 593, 600-01 (740 SE2d 147) (2013) (reasonable for counsel to fail to object to bolstering testimony by law enforcement). See also *Terry v. State*, 284 Ga. 119, 122 (2) (d) (663 SE2d 704) (2008) ("It is reasonable strategy for defense counsel to place disagreeable information before the jury in a manner he can control rather than allow the subject matter to be presented in a more damaging fashion."). Moreover, even if counsel had objected, the State could have fairly easily had Whitmore rephrase her testimony to say that the use of the word "blowtorch" was consistent with how a child might describe being molested. See *Odom v. State*, 243 Ga. App. 227, 227 (1) (531 SE2d 207) (2000). A reasonable lawyer thus might have concluded that objecting on the grounds of bolstering would simply emphasize the error, giving the State an opportunity to present similar non-objectionable testimony and magnifying any harmful implications from it. See *Jones*, 292 Ga. at 602.

(b) The State also presented the testimony of a family friend with whom F. P. and his family had been living regarding the outcries that F. P. and his younger brother made to her about the molestation. On cross-examination, Gilmer's trial

8

counsel established that this witness had never met Gilmer. The questioning proceeded:

> [Counsel]: But you are so certain and positive that this stuff happened?
>
> [Witness]: I'm positive that it happened because –

Counsel then interrupted the witness, drawing an objection from the State. The court ruled that the witness could finish her answer, which led to the following colloquy:

> [Witness]: I know this happened for a fact to these kids because these kids wouldn't sit up here and lie. But I have something to say because, for one, I'm one of them kids, too. And when [F. P.] told me that – we was the same age that we was both molested. And –
>
> [Counsel]: So you've been molested before?
>
> [Witness]: Yes, I have. I was molested by my uncle. But [F. P.] didn't even know that. After he told me what happened to him, I told him, me and you have something in common: I was molested. And he looked at me and said, Aunt Miss [A. P.], you was? I said, yes, I was. We both hugged each other and we both cried. So I don't have no reason to sit up here and lie or come in here and tell a story or anything. I believe them children.

9

We agree that this witness also gave improper bolstering testimony. See *Barmore v. State*, 323 Ga. App. 377, 382 (3) (746 SE2d 289) (2013) (witness's testimony that she knew victims "wouldn't lie to [her]" was improper bolstering). However, we again find that reasonable trial counsel might not have objected to or moved to strike this testimony. At the new trial hearing, trial counsel testified that he did not find this testimony to be prejudicial to his client's defense because she was crying while on the stand, had never even been in the same state as the defendant, and counsel "was trying to draw out that she was just speaking on emotion rather than just the facts." And while he admitted that it was probably not the trial strategy that he predicted before the trial happened,[3] trial counsel explained that "during the moments that she was testifying, and I think she was being real emotional, it's quite a possibility that I wanted to get out to the jury that's an emotional thing, that she really has no – she never observed or saw, or heard anything up to that point, so, how could she be so sure, when she had no personal observation, whatsoever." We find that this was within the wide range of reasonable trial strategy. See *Arnold v. State*, 292 Ga. 268, 270 (2) (a) (737 SE2d 98) (2013) ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not

_____

[3] The family friend would not agree to speak with him prior to trial.

10

defend a particular client in the same way.") (citation omitted); *Phillips v. State*, 277 Ga. 161, 163 (587 SE2d 45) (2003) (Constitution does not guarantee representation by a lawyer who is errorless but one who renders reasonably effective assistance). Accordingly, we find no error in the denial of Gilmer's motion for new trial on this ground.

(c) Gilmer also enumerates as error his trial counsel's failure to obtain and introduce evidence of F. P.'s mother's arrest for perjury. It is undisputed that the charges were later dismissed. OCGA § 24-6-608 (b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness. . . .

Thus, while trial counsel clearly would not have been permitted to introduce extrinsic evidence of the mother's arrest for perjury, it is possible that he may have been able, subject to the trial court's discretion, to cross-examine her regarding the arrest. See *Gaskin v. State*, 334 Ga. App. 758, 762 (1) (a) (780 SE2d 426) (2015).

11

However, we have serious concerns as to whether evidence of the mother's arrest, standing alone, and where the charges were subsequently dismissed, would be probative of her truthfulness. See, e.g., *U.S. v. Lundy*, 416 FSupp.2d 325, 332-33 (III) (A) & (B) (E.D. Pa. 2005) (evidence of defendants' prior arrests for false statements to police that were later dismissed or resulted in acquittal were excluded at trial on grounds that prejudicial effect would outweigh probative value, especially where the government offered no evidence to suggest defendants were in fact guilty of those charges).[4] Because Gilmer did not call the mother to testify at the new trial hearing, there is no evidence in the record as to what her testimony would have been regarding the previous arrest. In the absence of such evidence, Gilmer has failed to make an affirmative showing that, had his trial counsel attempted to cross-examine the mother regarding the arrest, it would have been allowed in the discretion of the trial court. See OCGA § 24-6-608 (b). See also *Jones v. State*, 299 Ga. 377, 384 (5) (788 SE2d 477) (2016) (failure to make a meritless objection cannot constitute evidence of ineffective assistance); *Leopold v. State*, 324 Ga. App. 550, 555-56 (1) (b) (751 SE2d 184) (2013) (defendant unable to show ineffective assistance for failure to impeach

---

[4] The provisions of OCGA § 24-6-608 were patterned after Rule 608 of the Federal Rules of Evidence. See *Gaskin*, 334 Ga. App. at 762 (1) (a).

witness with prior criminal record where he failed to establish that evidence would have been admissible). Moreover, because he failed to proffer evidence regarding the mother's testimony in this regard, he cannot make the requisite showing of prejudice. See *Reaves v. State*, 292 Ga. 545, 550 (4) (739 SE2d 368) (2013).

(d) Gilmer also asserts that his trial counsel provided ineffective assistance when he failed to obtain and utilize the children's DFCS and counseling records, which related to events after the alleged molestation but before trial. We disagree. At the motion for new trial hearing, trial counsel testified that he was generally familiar with the procedure for requesting DFCS and therapy records. Specifically, trial counsel testified that his trial strategy for investigating similar child molestation cases was, "*If I received information* that DFCS may be involved in something, I'll file a motion [to request the records] . . ." (Emphasis supplied.) And to determine whether DFCS may have been involved in a case, his strategy was to submit a discovery motion to the State and to get the information from "the client, or family or friends of the client or something along those lines to lead me to information about DFCS records." Trial counsel did not testify, however, that he received any information in this case that would have led him to believe there were relevant DFCS or therapy records, and nothing else in the record indicates that counsel had notice of any

13

relevant records. Thus, Gilmer has failed to overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct. See *Kimble v. State*, 301 Ga. App. 237, 249 (7) (d) (687 SE2d 242) (2009) (although "reasonable professional judgment requires proper investigation," trial counsel was not deficient for failing to discover additional relevant documents where he had no indication that the State had, in addition to seizing items from the residence, recovered documents from a vehicle). See also *Dority v. State*, 335 Ga. App. 83, 107 (4) (i) (780 SE2d 129) (2015) ("The simple fact that additional documents might have been helpful is not enough.").

Moreover, even assuming *arguendo* that trial counsel's performance was deficient, we find that Gilmer has failed to show that there is a reasonable probability that obtaining the records would have led to a different trial outcome. Gilmer first argues that the records contained discrepancies regarding whether the children first made their outcry of sexual abuse in Georgia or after they moved to Kentucky. However, whether the children made their initial outcry in Georgia or Kentucky was not relevant to trial counsel's strategy, which was to discredit the children's mother as a spurned lover and to attack the children's ability to identify Gilmer following the passage of six years. And trial counsel pursued this strategy during his cross-

examination of both F. P. and his mother and his direct examination of Gilmer's mother.

Moreover, it is undisputed that statements in the records are consistent with their outcry that F. P. was "molested by [his] mom's boyfriend." Thus, Gilmer's reliance on *Darst v. State*, 323 Ga. App. 614 (746 SE2d 865) (2013) (physical precedent only) is misplaced. In *Darst*, which is not binding authority,[5] this Court found that DFCS records were necessary to obtain an expert witness' determination that the children's behavior was inconsistent with having been molested by defendant and that other explanations existed for their behavior. Id. at 620 (2) (a) (i). And an in camera review of the records revealed information that, if the children had been molested, it was by someone other than defendant. Id. Those circumstances are not present in this case. Here, we find no evidence that trial counsel had any indication that the DFCS and counseling records would have assisted him in defending Gilmer, and the records do not identify anyone other than Gilmer as the person who sexually abused the children.[6] See *Dority*, 335 Ga. App. at 107 (4) (i).

---

[5] See Court of Appeals Rule 33 (a).

[6] We also note that the trial court expressed concern at the new trial hearing regarding the admissibility of the records at trial. See *Jones*, 292 Ga. at 598 (5).

15

Gilmer also maintains that the records reveal numerous instances of prior untruthful conduct on the part of F. P. and his brother and provide an alternative explanation for the children's "flat affect" during their forensic interviews in 2008, which the State's expert witness testified was consistent with the alleged sexual abuse.[7] However, the incidents of sexual abuse for which Gilmer was convicted all took place in 2007, whereas the alleged alternative explanation for the children's flat affect occurred in 2009. And the alleged incidents of dishonesty on the part of the children all took place in 2009 and 2010, involving matters wholly unrelated to the identity of the person who sexually abused F. P. See *Glass v. State*, 255 Ga. App. 390, 403 (10) (f) (565 SE2d 500) (2002) (no ineffective assistance where claim that trial counsel failed to subpoena victim's counseling records relied on speculation that victim suffered from excessive lying and had difficulty distinguishing between fact and fiction because defendant was unable to show victim's mental condition or treatment was relevant to or affected credibility of her rape allegations).

---

[7] For example, Gilmer points out that the children exhibited flat affect following a brutal domestic violence incident in 2009.

16

Accordingly, we also find that Gilmer cannot satisfy the prejudice prong of the *Strickland* test; that is, he has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[8] (Citation and punctuation omitted.) *Aikens v. State*, 297 Ga. 229, 231 (3) (773 SE2d 229) (2015).

3. And finally, Gilmer asserts that the trial court erred in removing a juror during the course of the trial. Although he acknowledges that this decision was within the trial court's discretion, see *Moon v. State*, 288 Ga. 508, 512 (5) (705 SE2d 649) (2011), he nonetheless argues that the trial court abused this discretion because there was no factual or legal support for the juror's removal. We are unpersuaded.

Georgia law "provides that the trial court may remove a juror at any time, whether before or after final submission of the case to the jury if good cause is shown

---

[8] Gilmer asserts that the cumulative effect of his trial counsel's errors mandate a finding that counsel was ineffective. "We evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." *Wofford v. State*, 329 Ga. App. 195, 207 (5) (f) (764 SE2d 437) (2014). Here, even if trial counsel's performance was deficient with respect to the failure to obtain the DFCS records and the mother's arrest record, for the reasons explained in Division 2 (a) and (b), he has failed to show a reasonable probability that, but for those deficiencies, the outcome of his trial would have been different. See id. See also *Waits v. State*, 282 Ga. 1, 6 (4) (644 SE2d 127) (2007) ("Permitting the effect of 'non-errors' to be cumulated in order to reverse a conviction would vest nearly uncontrolled discretion in the appellate courts.") (citation omitted).

to the court that the juror is unable to perform his duty, or for other legal cause." (Citation and punctuation omitted.) *Moon*, 288 Ga. at 512 (5). See also OCGA § 15-12-172. "There must be some sound basis upon which the trial judge exercises his discretion to remove the juror." (Citation and punctuation omitted.) *State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006). The record in this case shows that the trial court removed the juror out of a concern that the other jurors had developed an impression – right or wrong – that the juror had outside knowledge about the case through acquaintance with Gilmer's mother.

During the second day of trial, Gilmer's counsel made the trial court aware that Gilmer's mother, an anticipated witness for the defense, recognized one of the jurors, Juror No. 10, as someone she knew from church. The trial court questioned the juror, who denied knowing her. Over the State's objection, the trial court declined to dismiss Juror No. 10. Gilmer's mother testified during the third day of trial, at which point Juror No. 10 notified the trial court that he did actually recognize her, and that the jury had talked about it the previous day. The trial court expressed concern over Juror No. 10 having discussed the matter with the other jury members and noted that "the jury started laughing" when Juror No. 10 was called from the jury room for questioning. The trial court worried that the jury's laughter might indicate that the

18

jury believed Juror No. 10 knew something about the case that they did not and therefore might cause the jury to give undue weight to Juror No. 10's opinions during deliberations. The State again asked the trial court to remove Juror No. 10, and the trial court took the matter under advisement.

After the close of evidence, the trial court removed Juror No. 10, explaining that the jury's laughter was clearly audible from the jury room when the deputy had summoned Juror No. 10 to the courtroom. The trial court also noted that Juror No. 10 had said "they recognize I keep coming out because there's supposed to be someone out here that I know," and that he was certain that he knew Gilmer's mother.[9] We find that the trial court, following its investigation into Juror No. 10's familiarity with the defense witness and his statements made to and in the presence of the other jurors, developed sufficient factual and legal support for its decision to remove Juror No. 10. See *Moon*, 288 Ga. at 513 (5). Accordingly, the trial court did not abuse its discretion, and this enumeration provides no basis for reversal. See *Clark v. State*, 282 Ga. App. 248, 253 (4) (638 SE2d 397) (2006) (trial court did not abuse its discretion in

---

[9] The trial court further noted that Juror No. 10 had waved toward the State's table while Gilmer's mother was on the witness stand, likely making the jury aware of whom he was supposed to know.

removing a juror who later admitted knowing defendant from seeing him at her work).

*Judgment affirmed. Ellington, P. J., Dillard, Branch, Mercier and Peterson, JJ., concur. Miller, P. J., Phipps, P. J., and McFadden, J., dissent.*

A16A0919. GILMER v. THE STATE.

McFADDEN, Judge, dissenting.

Gilmer has shown that his trial counsel's failure to object to the bolstering testimony of two witnesses was deficient performance and so prejudiced him that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been different. See *Daniel v. State*, 338 Ga. App. 389, 392 (3) (787 SE2d 281) (2016). Because Gilmer has shown that he received ineffective assistance of counsel, his convictions should be reversed. I therefore respectfully dissent.

1. *Deficient performance*.

As the majority finds, both the state's expert witness and the family friend to whom F. P. made his outcry gave impermissible bolstering testimony. And at the hearing on the motion for new trial, Gilmer's trial counsel agreed that these were both instances of improper bolstering testimony and that such testimony generally should draw an objection. Trial counsel testified that there was no strategic reason for his failure to object to the bolstering testimony of the expert witness. He further testified

that he did not think to object to the bolstering testimony of the family friend; instead, he was focused on "trying to draw out that [the witness] was just speaking on emotion rather than just the facts" and had "never observed or [seen], or heard anything up to that point, so, how could she be so sure, when she had no personal observation, whatsoever."

While "trial counsel is afforded tremendous deference over matters of trial strategy," such "trial strategy must be reasonably supported and within the wide range of professionally competent assistance." *Westbrook v. State*, 291 Ga. 60, 64 (4) (b) (727 SE2d 473) (2012) (citation omitted). In *Orr v. State*, 262 Ga. App. 125 (584 SE2d 720) (2003), for example, we held that trial counsel's performance fell outside the range of professionally competent assistance when he failed to object to improper bolstering testimony because he did not perceive it to be a comment on the witness's credibility and because, in any event, he did not believe the testimony was harmful. Id. at 129 (3).

A strategic choice is necessarily part of a strategy. It is a choice to forego one potential advantage in favor of another. See, e.g., *Jones v. State*, 325 Ga. App. 895, 898 (2) (d) (755 SE2d 815) (2014) (discussing counsel's strategic decision to forego cross-examination of witness in favor of "another tactical method or goal"). Although

2

a decision not to object may be a part of a reasonable trial strategy, see *Walker v. State*, 329 Ga. App. 369, 376 (3) (d) (765 SE2d 599) (2014), the record does not show that trial counsel made any such decision in this case. To the contrary, trial counsel's testimony shows that he made no decision at all concerning the improper bolstering. Trial counsel admitted to having no strategic reason for not objecting to the expert witness's testimony, and while he explained his efforts to mitigate the family friend's testimony, trial counsel did not indicate that he had done so as an intentional strategic alternative to an objection; rather, he simply did not think to object. The record does not reflect, nor did the trial court find,[1] that trial counsel made a strategic decision *not* to object to the family friend's bolstering testimony but instead to subject it to cross-examination. Cf. *Billington v. State*, 313 Ga. App. 674, 677 (1) (722 SE2d 395) (2012) ("Not objecting to testimony, but instead subjecting it to cross-examination, may be part of a reasonable trial strategy.") (citations, punctuation, and footnote

---

[1] The trial court found that the family friend's bolstering testimony was not responsive to questions from Gilmore's trial counsel and that trial counsel did not elicit that testimony. However, the trial court also found that, had Gilmore's trial counsel elicited the bolstering testimony, that act would have been consistent with a reasonable trial strategy of emphasizing the witness's emotionality and lack of factual knowledge. And the trial court held that, had Gilmore's trial counsel elicited the bolstering testimony, he could not have objected to it. Gilmore's trial counsel testified that he neither intentionally elicited the bolstering testimony nor sought it as part of his trial strategy.

3

omitted). Moreover, I do not see how an objection would have been inconsistent with his approach to the witness. Compare *Barmore v. State*, 323 Ga. App. 377, 383 (3) (746 SE2d 289) (2013) (declining to conclude that decision to cross-examine witness rather than object to bolstering testimony was unreasonable trial strategy where objection would have been inconsistent with cross-examination of witness).

Trial counsel "is strongly presumed to have rendered adequate assistance and made all significant *decisions* in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U. S. 668, 690 (III) (A) (104 SCt 2052, 80 LEd2d 674) (1984) (emphasis supplied). "But invoking the words 'tactics' and 'strategy' does not automatically immunize trial counsel against a claim that a tactical decision or strategic maneuver was an unreasonable one no competent attorney would have made under the same circumstances. 'Tactics' and 'strategy' provide no talismanic protection against an ineffective assistance of counsel claim." *Benham v. State*, 277 Ga. 516, 518 (591 SE2d 824) (2004) (citation and punctuation omitted). And this court has held that where trial counsel testified that her failure to make a valid objection "did not arise from a strategical decision[, it] follow[ed] that counsel's performance in this regard was deficient." *Arellano v. State*, 304 Ga. App. 838, 841 (698 SE2d 362) (2010) (citations omitted). None of the cases cited by the majority

require us to assess the reasonability of a decision where, as here, the record shows that no such decision was made.

For this reason, Gilmer overcame "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U. S. at 689 (III) (A) (citation and punctuation omitted). See *Mann v. State*, 252 Ga. App. 70, 73 (1) (555 SE2d 527) (2001) (finding that record did not support state's contention that trial counsel's failure to object to bolstering testimony constituted trial strategy, where trial counsel testified that "it was not trial strategy on her part for the jury to hear either witness testify that she believed the victim was telling the truth or that she believed the victim had been molested").

2. *Prejudice.*

For Gilmore to satisfy the prejudice prong for ineffective assistance of counsel, the "likelihood of a different result must be substantial, not just conceivable." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citation omitted). Nevertheless, his "burden is to show only a reasonable probability of a different outcome in the trial because of trial counsel's deficient performance, not that a different outcome would have been certain or even more likely than not." *Cobb v. State*, 283 Ga. 388, 391 (2) (658 SE2d 750) (2008) (citations and punctuation omitted). "'A reasonable

5

probability is a probability sufficient to undermine confidence in the outcome.'" *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009), quoting *Strickland*, 466 U. S. at 694 (III) (B).

And this is a case in which we should not be too sure that the outcome is right. As an investigating officer conceded at trial, the boys' outcries were the only evidence that Gilmore had molested F. P. There was no corroborating physical evidence of molestation. The outcries occurred more than a year and a half after the molestation was alleged to have occurred. The state's expert witness admitted that the forensic interviews of the boys were not well done; the interviewer asked some leading questions of the boys, did not elicit full disclosures from them, and appeared to confuse the younger boy, W. G., with his questioning. At trial, F. P. gave testimony that contradicted part of his earlier outcry regarding the aggravated molestation; he stated that Gilmer had *not* succeeded in his attempt to anally penetrate F. P. in the shower. And W. G. testified at trial that he did not remember Gilmer doing to him the things that W. G. had described in his outcry. Moreover, there was evidence that the boys disliked Gilmer for a reason unrelated to the alleged molestation; they both had witnessed Gilmer commit acts of violence against their mother, to the point where, at times, the boys felt compelled to defend their mother with a knife.

6

This court has found bolstering testimony to be particularly harmful under circumstances such as these. In *Orr v. State*, supra, 262 Ga. App. at 129 (2), we held that where no physical evidence of rape was presented and the only evidence against the defendant was the victim's testimony, "[a]ny bolstering of that critical testimony was extremely harmful to the defendant." But for trial counsel's deficiency in failing to object to the harmful bolstering testimony, we held, "the outcome of the trial could very well have been different." Id. at 129 (3). Similarly, in *Walker v. State*, 296 Ga. App. 531, 535 (1) (b) (675 SE2d 270) (2009), we held that a defendant had shown he was prejudiced by his trial counsel's failure to object to testimony that bolstered the credibility of a molestation victim, where the victim's testimony was the only evidence that the crime had occurred. In so doing, we noted that, "[i]n cases where we have affirmed convictions despite this type of improper testimony, there has been other evidence of guilt or other testimony which minimized the effect of the improper testimony." Id. (citations omitted). No such other evidence existed here.

Consequently, "a reasonable probability — a probability sufficient to undermine confidence in the outcome — exists that but for trial counsel's unprofessional errors [in failing to object to the witnesses' bolstering testimony], the outcome of this trial would have been different." *Douglas v. State*, 327 Ga. App. 792,

7

802 (2) (b) (iii) (761 SE2d 180) (2014) (citations and punctuation omitted). Gilmer has met his burden of showing that he received ineffective assistance of trial counsel, and his convictions should be reversed for that reason.

I am authorized to state that Presiding Judge Miller and Presiding Judge Phipps join in this dissent.

8