**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 23, 2022**

# In the Court of Appeals of Georgia

A22A0671. WHITE v. THE STATE.

LAND, Judge.

After a jury trial, Billy White was convicted of one count of rape. He appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his conviction. He also argues that his trial counsel rendered ineffective assistance by failing to interview his brother as a possible defense witness and by failing to adequately represent him during sentencing. For the following reasons, we affirm.

On appeal from a criminal conviction, this Court views the evidence in the light "most favorable to the verdict," with the defendant "no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to

find the defendant guilty of the charged offense beyond a reasonable doubt." *Bass v. State*, 356 Ga. App. 862, 865 (1) (849 SE2d 718) (2020). Accord *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Construed in proper light, the record shows that in September 2016, L. J., the 79-year old victim, had just returned to her house from a doctor's appointment when a man, later identified as White, approached her at her front door. The victim did not recognize White, but described him as a heavy set black male, between the ages of 30 and 40, wearing a brown shirt, blue jeans and having no facial hair. White asked the victim if her husband was home. Although the victim's husband was deceased, she lied and told White that her husband was in the house. White then said "Open the damn door. . . He ain't here." Upon entering the victim's house, White asked her for money and threatened to kill and rape her.

Once inside the victim's bedroom, White saw a jar of Vaseline on her nightstand. White ordered the victim to undress and put the Vaseline in her vagina. The victim complied, and White forcefully had sex with the victim without a condom. The victim testified that she had never had sex with anyone other than her late spouse and denied consenting to sex with White. White then took some of the victim's jewelry and fled the house. He threatened to return to kill her if she called the police.

The victim was then taken to the hospital where Celeste Boyd, sexual assault nurse examiner, performed a sexual assault exam. Boyd testified that her examination of the victim revealed a white, shiny substance that she believed to be Vaseline in the victim's vaginal area. She also observed petechiae marks caused by trauma that could be consistent with forced intercourse. The sexual assault kit, including DNA found in the victim's vaginal area, was submitted to the Georgia Bureau of Investigation for DNA analysis. The DNA was a match for White.

During an interview with law enforcement, White denied being at the victim's house in September 2016 and stated that he had not been there in the past two or three years. When confronted with DNA evidence, White continued to deny having sex with the victim. He did not tell law enforcement that he ever had any consensual sex with the victim.

White testified at trial that he had met the victim in 2013. White claimed that he had done chores and yard work for the victim and that he later started flirting with her and that they began having sexual intercourse between 2015 and 2016. White testified that sometime in February 2016, he noticed that the victim was easily confused, and would call him "Willie" instead of "Billy." White also testified that he had spent the night at the victim's house in July 2016, and when he dozed off in a

3

living room chair, the victim began yelling at him, "Who are you?" and ordered him to leave the house. White testified that on September 9, 2016, he went to the victim's house and knocked on the door. He testified that she opened the door and they had consensual sex in her bedroom. White explained that he did not pursue further interactions with the victim because she refused to give him any money.

Brenda Kendrick , the victim's in-home caretaker since 2014, testified that the victim had never mentioned White to her, she had never seen White at the victim's house before, and the victim had never mentioned having a boyfriend. Kendrick further testified that it was her own husband, and not White, that did yardwork for the victim. Kendrick testified that although the victim had a hearing problem, she did not appear to have issues with her mental capacity.

At the conclusion of the evidence, the jury acquitted White of burglary but found him guilty of rape. He was sentenced to life without the possibility of parole. White filed this appeal after the denial of his motion for new trial.

1. White argues that the evidence presented at trial was insufficient to sustain his rape conviction because the jury disregarded his testimony that he had a "long-term consensual adult relationship" with White. We disagree.

Here, there was sufficient evidence for a jury to find White guilty of rape beyond a reasonable doubt: the victim testified at trial that White forcibly had intercourse with her without her consent, the victim made an immediate outcry after the rape, and there was DNA evidence connecting White to the crime. See OCGA § 16-6-1 (a) (1) (a person "commits the offense of rape when he has carnal knowledge of . . . a woman forcibly and against her will;" carnal knowledge occurs "when there is any penetration of the female sex organ by the male sex organ"); OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact"). See also *Curgil v. State*, 363 Ga. App. 355 (871 SE2d 322) (2022) (the victim's testimony alone was sufficient to establish the elements of rape).

Any conflicts between White's testimony and the victim's testimony regarding whether the encounter was consensual "were for the jury to resolve." *Cantrell v. State*, 360 Ga. App. 862, 863 (1) (862 SE2d 329) (2021) (citation and punctuation omitted). Accord *Graham v. State*, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses," and the resolution of "such conflicts adversely to the defendant does not render the evidence insufficient").

2. White argues that he received ineffective assistance of counsel because his counsel (1) failed to properly investigate his case and prepare for trial, and (2) failed to "properly advocate" for him at sentencing. We are unpersuaded.

To prevail on his claims of ineffective assistance of counsel, White must show both that his trial counsel rendered deficient performance and that this deficiency prejudiced his defense. *Watkins v. State*, 361 Ga. App. 55, 61 (5) (862 SE2d 720) (2021). "To establish deficient performance, an appellant must overcome the strong presumption that his counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way in the light of all of the circumstances." Id., citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 S.Ct. 2052, 80 LE2d 674) (1984). This Court accepts the trial court's factual findings and credibility determinations unless they are clearly erroneous, but independently applies legal principles to the facts. *Johnson v. State*, 290 Ga. 382, 383 (2) (721 SE2d 851) (2012).

(a) White argues that his counsel rendered ineffective assistance by failing to interview his brother, Benny White, as a possible defense witness who would have knowledge of White's alleged relationship with the victim.

6

Trial counsel is "obliged to conduct a reasonable and thorough investigation, including locating and interviewing potential witnesses." *Douglas v. State*, 327 Ga. App. 792, 795 (2) (A) (761 SE2d 180) (2014). We presume that trial counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and counsel's performance is evaluated without reference to hindsight." (Citations and punctuation omitted) Id. at 795 (2).

We are not persuaded that White's trial counsel rendered ineffective assistance by failing to properly investigate the case. White's trial counsel testified that he spent about eight months preparing the case for trial and that he met with White at least five times, with each meeting lasting between 30 minutes to an hour. Trial counsel testified at the motion for new trial hearing that he did not call Benny White as a corroborating witness because there were complications making contact with him. Further, as the trial got closer, White expressed some hesitation about calling his brother as a witness, which caused trial counsel to believe that the brother was unlikely to testify on his behalf. See *Sullivan v. State*, 308 Ga. 508, 511 (2) (a) (842 SE2d 5) (2020) ("[A] decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective

7

assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances") (citation and punctuation omitted).

Further, White cannot prove that he was prejudiced by his trial counsel's failure to interview his brother because he failed to point to a proffer of evidence regarding what Benny White would have been expected to testify to at the motion for new trial hearing. See *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995) (appellant's failure "to make any proffer of the uncalled witnesses' testimony [made] it impossible for appellant to show that there is a reasonable probability the results of the proceedings would have been different" if he had testified) (citation omitted). Accord *Manriquez v. State*, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009) (defendant bore the burden of demonstrating both *Strickland* prongs, and when a defendant claims that trial counsel performed deficiently by failing to interview or call a witness for trial, defendant "must introduce either testimony from the uncalled witness or a legally recognized substitute for his testimony, such as an affidavit").

(b) Without providing citation to the relevant portion of the record, White argues that his trial counsel rendered ineffective assistance by failing to file a motion in limine to prohibit the admission of prior bad acts evidence.

"It is not the function of an appellate court to cull the record in search of error on behalf of a party." *Blackwell v. Goodwin*, 236 Ga. App. 861, 862 (1) (513 SE2d 542) (1999). Because White has failed to provide relevant citation to the record of the evidence that he claims his trial counsel should have sought to exclude through a motion in limine, we deem this argument abandoned. See Court of Appeals Rule 25 (c) (2) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration"). Accord *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 185 (2) (558 SE2d 411) (2001) ("Appellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation or argument") (citation omitted).

(c) White argues that his trial counsel failed to accurately inform the trial court of the applicable law governing recidivist sentencing and failed to advise the trial court that it had the discretion to probate part of his sentence. This argument is without merit.

The record shows that the State filed a recidivist notice under OCGA § 17-10-7 (a) and (c) based on White's four prior felony convictions. At the sentencing hearing, the State argued that OCGA § 17-10-7 (a) and (c) mandated that the trial court

sentence White to life without the possibility of parole. White's counsel then instructed the trial court that OCGA § 17-10-7 (a) and (c) did not deprive the trial court of the discretion to impose a split sentence, and requested that the trial court sentence White to the minimum sentence available to the trial court's discretion—that is, 25 years to serve followed by life on probation. See OCGA § 16-6-1 (b) (a person convicted of rape "shall be punished by death, by imprisonment for life without parole, by imprisonment for life, or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life,"and any person convicted of rape shall "in addition, be subject to the sentencing and punishment provisions of [OCGA § ] 17-10-7); *Pritchett v. State*, 267 Ga. App. 303, 304 (1) (599 SE2d 291) (2004) (although OCGA § 17-10-7 (c) "prohibits parole" for a four-time recidivist, "it does not dispense with the trial court's discretion to probate or suspend part of the sentence under OCGA § 17-10-7 (a)"). Once the trial court sentenced White to life without parole , White's trial counsel again urged the trial court to consider case law indicating that it had the discretion to suspend or probate a portion of his sentence. The trial court declined to change its sentence. The fact that the trial court disagreed with trial counsel's sentencing

recommendation did not make trial counsel ineffective. White has therefore failed to meet his burden under *Strickland*, supra.

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur*.